OF THE

# UNITED STATES,

FOR THE

# DISTRICT OF VERMONT,

## OCTOBER TERM, 1853.

———

HENRY HUBBARD AND SOLOMON DOWNER, ADMINISTRATORS, OF S. F. BELKNAP *v.* THE NORTHERN RAILROAD CO.

AND

SAME *v.* SAME AND TRUSTEES.

*Jurisdiction. Motion to dismiss, &c.*

The Circuit Court of the U. S. has no jurisdiction, and of course cannot exercise any, but such as Congress, by legislative acts warranted by the constitution, has conferred upon it.

Where one of the plaintiffs resided in New Hampshire, and the other in Vermont, and the defendant in New York, *it was held*, this court had no jurisdiction of the case; and where such suit was originally brought in the State Court, *it was held*, that the case could not be removed to this court, and on motion, the same was dismissed, and remanded to the State Court.

The erection of the Supreme and Inferior Courts of the U. S., under the constitution of the U. S., considered.

THESE actions being actions at law, were originally instituted in the State Court, and were removed from that court to this court, on motion of the defendants, under the act of Congress of September 24th, 1789. The actions having been entered in this court, pursuant to the order of removal from the State Court, the plaintiff appeared, and filed their motions to dismiss the actions, and remand them to the State Court, for want of jurisdiction in this court.

*J. Converse* for plaintiffs.

*S. S. Phelps* and *L. B. Peck* for defendants.

PRENTISS, J. The judicial power of the United States, by the constitution, is vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish. And here I cannot forbear saying, what is very naturally suggested to the mind by this reference to the constitution, though it may have no direct or immediate bearing upon the particular matter in question, that the more closely any one studies the constitution of the United States, and the greater his experience and opportunities of observation in civil life, the more he will be brought to admire the wisdom, the sagacity, and the enlightened patriotism of the authors of that instrument. None of its provisions present higher evidence of intelligence, judgment, and inflexible devotion to principle, than those concerning the judiciary,—giving it, as they do, a limited yet adequate jurisdiction, extending to, but not going a jot beyond, what the wants, necessities, and exigences of the government of a nation, formed by a union of States, retaining in severalty a distinct, but qualified sovereignty, require—with a tenure of office during good behavior, determinable only by misconduct,—thus securing, as far as any organic law can do, consistently with subjection to just responsibility, that independence of opinion and action which is indispensibly requisite to preserve rectitude, impartiality and firmness in the administration of justice.

Under and pursuant to the constitution, Congress, besides a Supreme Court, has established certain courts inferior to that court, called and known as the Circuit and District Courts. In erecting these courts, Congress might have given them such jurisdiction as it thought proper, keeping within the limits prescribed in the

constitution. It might have vested in the Circuit Court, for instance, more or less of the judicial power of the United States, not by the constitution vested originally or exclusively in the Supreme Court. It has given it, not all it might have given it under the constitution, but a limited and restricted jurisdiction. By the constitution, the judicial power of the United States extends, for example, in general terms, to "controversies between citizens of different States;" but by the act of Congress, the Circuit Court cannot take jurisdiction of all such controversies, but only of such where the matter in dispute exceeds the sum or value of five hundred dollars. So, as we shall find, the jurisdiction is subject to restrictions in other respects, such, for instance, as residence of one of the parties in the district where the suit is brought. The result therefore is, that this court has no jurisdiction, and of course cannot exercise any, but such as Congress, by legislative acts warranted by the constitution, has conferred upon it.

The plaintiffs are joint administrators, under letters of administration granted by a Court of Probate in this State, the intestate having had his domicil here. One of the plaintiffs, Hubbard, is a citizen of New Hampshire, and the other, Downer, a citizen of this State. The defendant is a corporation, created, established, and performing its corporate functions in New York. The suits were regularly commenced in the State Court according to the laws of the State, service being made upon the defendant in one case by attaching a large amount of personal property, and in the other by attaching personal property, and also certain debts owing the defendant by certain persons summoned in as trustees.

The language used by Congress, in providing for and regulating the removal of causes at the instance of the defendant, from a State Court to the Circuit Court, is not the same, in reference to the character or residence of the parties, as that employed in relation to suits originally brought to the Circuit Court. There is a marked difference, in the particular mentioned, in the phraseology of the two provisions,—one being much more restrictive than the other. In that giving original jurisdiction, the words are, "where the suit is *between* a citizen of the State where the suit is brought and a citizen of another State;" in that giving jurisdiction of suits originally commenced in a State Court, and regulating their removal, the words are, "commenced *by* a citizen of the State in

which the suit is brought, *against* a citizen of another State." Of course, jurisdiction, which is excluded in both classes of cases where neither party is a citizen of the State in which the suit is brought, is not coextensive in the latter class with that in the former ; for no suit, for instance, commenced in a State Court, *by* a citizen of another State *against* a citizen of the State where the suit is brought, can be removed to the Circuit Court, although it might have been originally brought there. But the difference between the two provisions, so far as concerns the single isolated question here presented, is not material, the construction in that particular, as will be seen, being alike as to both.

If Downer were the sole plaintiff in these actions, he being a citizen of this State, and the defendant resident in New York, the cases, it is obvious, would be within the very terms of the act of Congress ; but if Hubbard were the sole plaintiff, he not being a citizen of this State, the cases, it is equally obvious, would not be within the act. The question, therefore, simply is, whether, there being two plaintiffs, it is sufficient to bring the cases within the provision of the act of Congress and give jurisdiction, that one of the plaintiffs is a citizen of this State, or whether it is necessary that both should be.

Though there may be no adjudged case exactly in point or, in other words, any express adjudication in point, upon this particular provision of the act, there are several cases upon the provision relating to original jurisdiction, which, from just analogy, would seem to decide the present question. In the case of the *Corporation of New Orleans* v. *Winter et al.*, (in error,) 1 Wheat. 91, where the plaintiffs below brought their suit in the Circuit Court of Louisiana, one of them being a citizen of the State of Kentucky, and the other a citizen of the Mississippi Territory, *it was held*, that a citizen of a *territory*, cannot sue a citizen of a State in the courts of the United States, nor can those courts take jurisdiction by other parties being joined who are capable of suing. MARSHALL, CH. J., after stating that Winter being a citizen of the Mississippi Territory was incapable of maintaining a suit alone in the Circuit Court of Louisiana, asks, " Is his case mended by being associated with others who are capable of suing in that court ?" And he decides the question by saying—" In the case of *Strawbridge et al.* v. *Curtis et. al.*, 3 Cranch 267, it was decided, that where a joint in-

Administrators of Belknap v. Northern Railroad Co.

terest is prosecuted, the jurisdiction cannot be sustained, unless each individual be entitled to claim that jurisdiction." The sum of the matter seems to be, that in every case brought before a Circuit Court by original process, each of the persons prosecuting must be competent to sue, and each of the persons defending liable to be sued in such court. Here, one of the plaintiffs, as well as the defendant, residing out of this district, it is quite evident that the cases between these parties, though between citizens of different States, were not of a character to be within the original cognizance of this court, and of course could not have been instituted therein.

From the rule so laid down at an early day, and thus re-considered and re-affirmed at an after period, in respect to the jurisdiction of suits originally brought to the Circuit Court, it must follow, unless a distinction be made where there is no perceptible ground of difference, that the jurisdiction cannot be sustained in the case of a suit originally commenced in and removed from a State court, except the citizenship of each individual be such as to make the suit removable, and thus subject him to such jurisdiction. According to the rule, the local residence of all the parties on each side must be such as to bring the case within the provision of the act of Congress regulating the removal; that is, all the party plaintiffs must be citizens of the State in which the suit is brought, and all the party defendants citizens of some other State or States.

Such appearing to be the construction, not only authorized, but called for, by determinations of the highest judicial authority, it forms the law for the decision of the question here pending; and according to it, one of the plaintiffs not being a citizen of this State, this court has not jurisdiction. The consequence is, that the motions to dismiss must be allowed, and the causes remanded to the State court.

NOTE.—It was clearly seen by the great men who conceived and framed the constitution of the United States, that without a national judiciary, existing under and deriving its authority solely from the national government, with powers commensurate with but not exceeding the great purposes and objects of the Union, the government would have neither efficiency nor stability, and would soon perish for want of power in itself to enforce obedience to its laws, and hold the people, and through them the States, in just

subordination to the paramount national authority. It was considered indispensable to have a judiciary, to take cognizance not only of all suits and prosecutions in behalf of the general government, or arising under its laws, but of controversies between citizens of different States, and especially of all controversies between States, arising out of adverse or interfering State claims, thereby securing a peaceful determination of what might otherwise grow into forcible collisions and conflicts ; and also, for protection to every citizen of the Union against all unconstitutional invasions of his rights, either by acts of legislation prohibited to the States, or by unauthorized legislative action of the general government.

It was also held, and acted upon as an undeniable proposition, that, to maintain the constitution itself in its true spirit and meaning, and secure a just and faithful performance of judicial duty, in all questions arising under the constitution and laws, or affecting individual private rights, it was not only expedient and judicious, but essentially necessary, to make the judiciary *independent*—independent as provided in the constitution—by elevating the judges, as far as practicable, above and beyond the reach of govermental, popular, or sinister influences. It was seen, that if you make the continuance in office of a judge dependent on re-appointment or re-election at short stated periods, you so much lessen or impair his independence; and that just in proportion as you do that, you diminish your security for his good behavior. At the same time, it was seen, what more than sixty years experience has proved to be true, that, as the judges neither would have, nor could exercise, any power otherwise than through the decision of controversies brought judicially before them, between party and party, there could be no danger whatever, either to the States or the people, from such independence of position and consequent independence of opinion and action.

The principle of judicial independence, and the reasons on which it is founded, apply, in their utmost force, to all free representative governments. If in favorable times and under peculiarly favorable circumstances, a dependent judiciary may be both able and upright, as in Vermont for instance many years much to her credit as well as advantage, it raises no doubt as to the superior wisdom and safety of a more permanent tenure of office. The instance mentioned is at the most but an exception, and is owing chiefly,

to the steady, uniform political character of the State, to the habit prevailing in it, of never allowing the judicial appointments to be controlled by party politics, and to the commercial pursuits and interests of the people being of such limited extent as to make the suits in its courts in general of comparatively small magnitude. But *there*, as everywhere else, it would be both wiser and safer to have the independence of the judiciary such as to place it, not only beyond the reach, so long as its ministers conduct themselves with integrity, of either of the other powers of government, but also beyond the possible reach of popular and personal influences.

In general, notwithstanding all the formal guarantees of a written constitution, if the judge be not thus independent, what assurance or confidence can the citizen have of impartial justice, or of certain and effectual protection from unjust and unconstitutional violations of his rights ? If the liberty of speech, or of the press, be assailed; if the writ of *habeas corpus* be suspended in time of peace ; if the trial by jury be invaded; if the obligation of contracts be impaired, or vested rights infringed ; if the citizen be deprived of his liberty, or of his property, or if his life be unconstitutionally put in jeopardy, where is the remedy, or who is to stay the hand of oppression ? The only remedy is in the courts of justice; and without an independent judiciary—independent in the proper sense—it would be hopeless to think of maintaining the provisions of the constitution for the security of these and other private rights, in their full vigor and efficacy, according to their true legitimate meaning, or of their having any settled, fixed, and uniform operation. Indeed, with a dependent, or, in other words, a time-serving and temporizing judiciary, the constitution, would either cease to be the supreme paramount law, or, what would be the same in effect, would be made to mean, in all parts most essential to the security of the citizen, just what the legislative power, or popular opinion for the time being, might be disposed to have it.