## Case No. 13,100.

### SMITH v. RINES et al.

[2 Sumn. 338.] [1]

Circuit Court, D. Massachusetts. May, 1836.

REMOVAL OF CAUSES—SEVERAL DEFENDANTS—PETITION OF ONE TO REMOVE—ACTION ON TORT—JOINDER—SEVERANCE.

1. The language of the judiciary act of 1789, c. 20, § 12 [1 Stat. 79], though in its terms it applies only to the case of a single defendant, must be applied to the party defendant, whether one or many, so as to embrace cases, where several aliens, or several citizens of another state, are jointly sued as defendants.

[Cited in Field v. Lownsdale, Case No. 4,769; Fields v. Lamb, Id. 4,775; Sands v. Smith, Id. 12,305; Florence Sewing Mach. Co. v. Grover & Baker Sewing Mach. Co., Id. 4,883; Petterson v. Chapman, Id. 11,042; Fisk v. Henarie, 32 Fed. 422.]

[Cited in Bryant v. Rich, 106 Mass. 192; Gordon v. Green, 113 Mass. 261; Mutual Life Ins. Co. v. Allen, 134 Mass. 390; Washington, A. & G. R. Co. v. Alexandria & W. R. Co., 19 Grat. 592.]

2. According to the section above-cited, such cases only are liable to removal from the state to the circuit court, as might, under the law or constitution of the United States, have been brought before the circuit court by original process.

[Cited in Sifford v. Beaty, 12 Ohio St. 196.]

3. Semble. An action on the case, in the nature of an action for a conspiracy, may be maintained, as in the case of a common tort, against all, or any one, or more of the tort-feasors.

[Cited in Murray v. Lovejoy, Case No. 9,963; Lightner v. Brooks, Id. 8,344; Kaitel v. Wylie, 38 Fed. 867; Thomas Huston Electric Co. v. Sperry Electric Co., 46 Fed. 75.]

[Cited in Bryant v. Rich. 106 Mass. 192.]

4. In cases of tort, the plaintiff may elect to make his action joint, or several; and no defendant can take away this election.

[Cited in Pirie v. Tvedt, 115 U. S. 43, 5 Sup. Ct. 1035; Little v. Giles, 118 U. S. 601, 7 Sup. Ct. 35.]

[Cited in Zeller v. Martin, 84 Wis. 6, 54 N. W. 330.]

[1] [Reported by Charles Sumner, Esq.]

5. In order to remove a cause from the state to the circuit court, under the judiciary act of 1789, c. 20, § 12, all the defendants must join in the petition for the removal. And a cause cannot be removed as to some defendants, and left depending in the state court as to others.

[Cited in Gard v. Durant. Case No. 5,216; Smith v. M'Kay, 4 Fed. 354.]

6. A severance of a suit, so as to make two several suits out of one joint suit, is not allowed at the common law as to parties defendant.

7. Quære—as to the remedy, where the provisions of the act above cited are evaded, by a fraudulent joinder of nominal defendants, in order to prevent a removal of the suit.

[8. Quoted in U. S. v. Hammond, Case No. 15,294, and in Hobbs v. McLean, 117 U. S. 580, 6 Sup. Ct. 876, to the effect that it is not for courts of justice proprio marte to provide for all the defects or mischiefs of imperfect legislation.]

[Cited in State v. Noble, 118 Ind. 371, 21 N. E. 244; State v. Simon (Or.) 26 Pac. 173.]

This was an action of trespass on the case, in the nature of a conspiracy to defraud, and for actually defrauding the plaintiff, James Smith, in the purchase of certain lands, situate in Maine. The damages were laid at $65,000. The action was originally brought in the court of common pleas of the county of Worcester, in the state of Massachusetts; returnable to the last March term of that court, by James Smith, citizen of Massachusetts, against four persons, specially named in the writ, as inhabitants of the county of Worcester (upon whom the process was duly served); against Stover Rines, described in the suit, as of Orono, in the state of Maine, and commorant in Boston, in the county of Suffolk (upon whom also the process was served,) and against three other persons, described as inhabitants of the state of Maine, upon whom the process was not served. All the parties, upon whom the process was served, regularly appeared at the return term. And the defendant, Rines, then filed his separate petition, praying for a removal of the cause into the circuit court, at the present May term, according to the provisions of the 12th section of the judiciary act of 1789, c. 20. The plaintiff entered a protest against the removal; which was ordered and allowed by the court, with a stay of all further proceedings in that court. A motion was now made by the plaintiff, to remand the cause to the state court, upon the ground, that it did not fall within the provisions of the 12th section of the act of 1789, and, therefore, that it was incompetent for the court to maintain jurisdiction over it.

Emory Washburn, for plaintiff.

This court has no jurisdiction over the present parties, under the judiciary act of 1789, c. 20. If any thing gives it jurisdiction, it is the parties; for the subject-matter of the suit does not give it. The process is not a new one; it is the same cause, which was commenced in the state court, and is brought here, with all its incidents. The words of the statute are, "the cause shall proceed in the same manner as if it had been brought (in the circuit court) by original process." 1st. One of several defendants cannot, against the consent and without the co-operation of the other defendants, remove a cause into the circuit court. Under the terms, "citizen" and "defendant," which are used in the singular number in the statute, all the parties defendant must be considered as one party. Ward v. Arredondo [Case No. 17,148]. If this be so, one defendant cannot remove a cause into the circuit court, when the others elect to have it remain in the state court. 2d. But this cause is not within the jurisdiction of this court, even if all the defendants elect to be tried here, because the plaintiff, and part of the defendants are citizens of Massachusetts. The constitution of the United States extends the jurisdiction of the courts under it to "controversies between citizens of different states." The statute of 1789, c. 20, § 11, limits this power to cases "where the suit is between a citizen of the state where the suit is brought, and a citizen of another state." And in determining the question of jurisdiction, when it depends upon the character of the parties, the court are governed by the record alone. The cases are numerous, where this point has been discussed in various forms. Brigham v. Cabot, 3 Dall. [3 U. S.] 382; Wood v. Wagnon, 2 Cranch [6 U. S.] 9; Winchester v. Jackson, 3 Cranch [7 U. S.] 515; Montalet v. Murray, 4 Cranch [8 U. S.] 46; Hodgsdon v. Bowerbank, 5 Cranch [9 U. S.] 303; Sullivan v. Fulton Co., 6 Wheat. [19 U. S.] 450; Breithaupt v. Bank of Georgia, 1 Pet. [26 U. S.] 238; Brown v. Keene, 8 Pet. [33 U. S.] 116; White v. Fenner [Case No. 17,547]. By inspecting the record here, it will be found that four of the defendants are not citizens of another state than that in which the action was brought. It is the plaintiff's common-law right to join these defendants in this action. 1 Chit. Pl. 74; Skinner v. Gunton, 1 Saund. 228. The cause, then, is one in which all the defendants are jointly interested, for it is now the same cause that it was in the state court. And where the defendants in a cause are jointly interested, and not merely nominal, if either is a citizen of the same state as the plaintiff, the court has no jurisdiction. The authorities seem to be conclusive on this point. Strawbridge v. Curtis, 3 Cranch [7 U. S.] 267; Corporation of New Orleans v. Winter, 1 Wheat. [14 U. S.] 91; Cameron v. McRoberts, 3 Wheat. [16 U. S.] 591; Wormly v. Wormly, 8 Wheat. [21 U. S.] 451; Banks v. Carneal, 10 Wheat. [23 U. S.] 182; Kirkpatrick v. White [Case No. 7,850]; Beardsley v. Torrey [Id. 1,190]; West v. Randall [Id. 17,424]; Ward v. Arredondo [supra]. The same doctrine has been recognized by state courts. Miller v. Lynde, 2 Root, 444; Bissell v. Horton [Case No. 1,448]. It may be contended, that, as in the trial of the ac-

tion, all but Rines may be discharged, and a verdict against him alone would be good, he may be tried separately. But this cannot be done against the plaintiff's consent. If it was his right to join Rines, the latter cannot be severed without doing the plaintiff a wrong. It would make the other defendants witnesses for Rines. Rosc. Ev. 84; Gibbs v. Bryant, 1 Pick. 128. It would also prevent the plaintiff from having a joint judgment, and compel him to accept from Rines the amount found, when, by common law, he has a right to a judgment against all the defendants found guilty, de melioribus damnis. If this court undertakes to proceed against Rines alone, it can only do so by dividing the original action into two, leaving half in the state court, and half in this. But this would be expressly against the language of the statute, which declares, that the state court, after the removal, "shall proceed no farther in the cause." The whole record must come up; and when does the division take place, and which court makes it? Is the division made in the state court, or is a part of the cause remanded?

Peleg Sprague, for defendants.

The plaintiff being a citizen of Massachusetts, the defendant, Rines, a citizen of Maine, claims the right to a trial in this court, by virtue of the constitution of the United States, art. 3, § 2, and the judiciary act of 1789, §§ 11, 12, which were intended to secure the citizens of each state against being compelled to have their controversies with citizens of another state decided by the local tribunals of the state of their adversary. This right the defendant may waive, either by submitting to the state jurisdiction, or voluntarily incurring liabilities by joint contracts with citizens of another state. But such waiver must result from his own voluntary act, and not from the will or act of his adversary. If this action were founded on contract, it could not be maintained against Rines alone, it would be necessary to prove a joint contract by the defendants with the plaintiff, and in such case Rines, by thus voluntarily associating himself with the defendants, citizens of Massachusetts, in making engagements to the plaintiff, might be held to have subjected himself to the same jurisdiction as his associates, as the remedy in actions ex contractu must be joint, and the plaintiff could not sue the other defendants in the courts of the United States. But this is an action of tort brought against Rines, and other persons with whom he has never had any connexion or association, and with whom he is now coupled, without any agency of his own, and against his will, by the mere adversary act of the plaintiff. If there could be no judgment against him unless the other defendants were also found guilty, he would have the benefit of their co-operation in the defence, and that security for the impartiality of the court, which aris-

es from the necessity of their giving judgment against their own citizens at the same time and for the same cause as against a stranger. But in this case, a verdict and judgment might be rendered against Rines alone, and he would have no right to contribution. The interest of the other defendants may be adverse to him, for if they have done wrong, it may suit their purposes to throw the whole burthen upon a stranger. This is not mere theory. Should this case proceed to trial, it will be seen, that such adverse interest is matter of fact. Ought then Rines, a citizen of Maine, to be deprived of the benefit of having a trial in the courts of the United States, and compelled to submit to a final decision in the state court of an adversary, merely because that adversary has seen fit to bring in other persons, all of whom are hostile in interest to Rines. Could such have been the intention of the judiciary act? If this were a new question, would any one doubt that this defendant comes within both the letter and the spirit of the 12th section of that act? But we contend, that no case has decided the present question, and that it is competent for this court to allow this defendant to transfer his case into the circuit court, even if the effect should be to leave the action to proceed in the state courts as against the other defendants. No adjudication has gone further than to prohibit a severance in case of joint contracts, and there are several cases, especially in equity, in which the right to sever is recognized for the purpose of sustaining jurisdiction, where it would not otherwise be allowed. In answer to the objection, that the plaintiff, by the common law, has a right to proceed against the defendants, either jointly or severally, at his election, and that he has elected to proceed jointly, we answer, that, without pausing to discuss what the right may be at common law, it is undoubtedly competent for the legislature to change it. The common law, therefore, cannot be interposed, to resist the legitimate operation of the judiciary act. The counsel commented on authorities cited on the other side, and referred to the following: Skinner v. Gunton, 1 Saund. 228c, 229, 230, note 4; Govett v. Radnidge, 3 East, 67; 1 Chit. Pl. 75; Strawbridge v. Curtis, 3 Cranch [7 U. S.] 267; Carneal v. Banks, 10 Wheat. [23 U. S.] 181; Cameron v. Roberts, 3 Wheat. [16 U. S.] 571; Gordon v. Coldcheagh, 3 Cranch [7 U. S.] 269; Brown v. Strode, 5 Cranch [9 U. S.] 303; Wormley v. Wormley, 8 Wheat. [21 U. S.] 421; Craig v. Cummings [Case No. 3,-331]; Browne v. Browne [Id. 2,035].

Jeremiah Mason, in reply, was stopped by the court.

STORY, Circuit Justice. The motion has been very ably and elaborately discussed at the bar; and I should have heard the further argument, which was proposed to be

made in support of it, if, upon hearing all, that has been so ingeniously said on the other side, I could bring my mind to doubt, that the motion ought to be granted. The 12th section of the judiciary act of 1789, c. 20, provides: "That if a suit be commenced in any state court against an alien, or by a citizen of a state, in which the suit is brought, against a citizen of another state, and the matter in dispute exceeds the sum or value of five hundred dollars, exclusive of costs, to be made to appear to the satisfaction of the court, and the defendant shall, at the time of entering his appearance in such state court, file a petition for the removal of the cause for trial into the next circuit court to be held in the district, where the suit is pending, and offer good and sufficient surety for his entering in such court, on the first day of its session, copies of said process against him, and also for his there appearing and entering special bail in the cause, if special bail was originally requisite therein, it shall be the duty of the state court to accept the surety, and proceed no further in the cause, &c.; and the said copies being entered in such court of the United States, the cause shall there proceed in the same manner, as if it had been brought there by original process."

Now, the first remark, that occurs upon the language of this section, is, that in its terms it applies only to the case of a single defendant. But, in its true interpretation, it cannot admit of a rational doubt, that it means the party defendant, whether one or many, and that it must apply to cases, where several aliens, or several citizens of another state, are jointly sued as defendants; for in such a case, each of them is in the very predicament presumed by the act.

In the next place, it is apparent from the language of the closing passage of the section above quoted, that it contemplates such cases, and such cases only, to be liable to removal, as might, under the law, or at all events under the constitution, have been brought before the circuit court by original process. And this consideration, upon the actual state of the authorities, is most important. The case of Strawbridge v. Curtis, 3 Cranch [7 U. S.] 267, the earliest on the subject, was a bill in equity, originally brought in the circuit court of this district; and some of the plaintiffs were alleged to be citizens of Massachusetts. The defendants were all stated to be citizens of Massachusetts, excepting Curtis, who was alleged to be a citizen of Vermont, and upon whom the process was served in Massachusetts. The question made at the bar under these circumstances was, whether the circuit court had jurisdiction of the cause, under the judiciary act of 1789, c. 20, § 11, which provides, that "the circuit courts shall have original cognizance, concurrent with the courts of the states, of all suits of a civil nature, at common law and in equity, where the matter in dispute exceeds the sum or value of five hun-

dred dollars, and the United States are plaintiffs or petitioners; or an alien is a party; or the suit is between a citizen of the state, where the suit is brought, and a citizen of another state." The supreme court decided against the jurisdiction. Upon that occasion, the late chief justice said: "The court understands these expressions to mean,—that each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued in the federal courts. That is, where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued in those courts. But the court does not mean to give an opinion in the case, where several parties represent several distinct interests, and some of these parties are, and others are not, competent to sue, or liable to be sued in the courts of the United States." This language, it is true, was applied to a case, where the suit was originally brought in the circuit court. But it has always been understood as equally applicable to all cases of suits removed from a state court. And, looking to the words used in the 11th and 12th sections of the act, as to this point, it seems absolutely impracticable to make any solid distinction between them. My Brother, the late Mr. Justice Washington, so thought in the case of Beardsley v. Torrey [Case No. 1,190]. "If," said he, "this suit could not have been maintained against S. under the 11th section of the judiciary act, if it had originated in this court, it cannot be removed into this court under the 12th section, so as to subject that party to the jurisdiction of this court." This reasoning is certainly correct, in the sense in which he used it, that is, as requiring all the parties on each side to be citizens of different states, though certainly there is a distinction in other respects; for, under the 11th section, the plaintiff need not be a citizen of the state, where the suit is brought, as he must be under the 12th section. The case of Strawbridge v. Curtis [supra], has never been departed from; but has constantly been recognised as the basis of the subsequent decisions of the supreme court upon this branch of jurisdiction. It was expressly confirmed in Corporation of New Orleans v. Winter, 1 Wheat. [14 U. S.] 91, and Cameron v. Roberts, 3 Wheat. [16 U. S.] 596. And Mr. Justice Thompson, in his able opinion in Ward v. Arredondo [supra], applied it, as Mr. Justice Washington did in Beardsley v. Torrey [supra], to the exposition of the jurisdiction of the court in cases of removal of suits, equally with those of original suits. "It is," said he, "a well-settled rule, and indeed has not been denied by the defendant's counsel, that when the jurisdiction of this court depends on the character of the parties, and such party, either plaintiff or defendant, consists of a number of individuals, each must be competent to sue in the courts of the United States, or jurisdiction cannot be entertained." He then applied the doctrine to the very case before him, which was that of a plaintiff, a citizen of New York, suing a bill in equity, in a state court, against

certain aliens, and also against Thomas, a citizen of New York, the alien seeking to remove it into the circuit court. After putting the point, whether, as the plaintiff, and Thomas, one of the defendants, were both citizens of New York, the cause could be removed into the circuit court, he said: "It is very evident, that Ward (the plaintiff) could not originally have filed his bill in this court against Thomas, as one of the defendants; and it would seem to follow as a necessary consequence, that if jurisdiction could not be entertained directly, it ought not to be acquired indirectly."

But the argument which has been addressed to the court upon the present occasion is, that in the suit now before us the defendant has a separate and distinct interest from his co-defendants, and, therefore, it falls within the reasoning of the court in the case of Strawbridge v. Curtis, as a suit, not only within the original jurisdiction of the circuit court, but within the jurisdiction founded on the removal from the state court. It is certainly true, that actions, founded in tort, may be maintained against all, or any one or more of the tort-feasors; for every tort is joint, as well as several; and the case of Skinner v. Gunton, 1 Saund. 228, is relied on to show, that an action on the case, in the nature of an action for a conspiracy, falls within the limits of the doctrine. That case, it must be admitted, is directly in point, though at first view, the objection taken by Sergeant Saunders seems to be well founded; viz. that where a conspiracy is alleged by several, and all the defendants are acquitted, but one, the action must fail; for one cannot conspire alone. This is true in a criminal accusation. But the true answer to the objection civiliter is that given by the court, that the conspiracy is but inducement, and not the substance of the action, which was there the undue arresting of the plaintiff; and here it is the fraud actually perpetrated upon the plaintiff, to his grievous injury.

But, assuming it to be true, that the tort, stated in this action, is several, as well as joint, still it does not advance the argument at all, unless it can be established, that the defendant has a right to elect to consider it as several, and also that the defendant has no joint interest in this suit. Now, at the common law, which is the law of Massachusetts, and which this court, equally with the state court, is bound to administer, nothing is more clear, than the right of the plaintiff to bring an action of this sort against all the wrong-doers, or against any one or more of them, at his election. There is no principle, upon which the defendant has a right, in any courts of justice, to say. that the action shall be several, and not joint; and thus to take away the right of election, which the plaintiff has by law, to make it joint. If the defendant has no such right, upon what pretence can this court, in virtue of the removal of the suit from the state court, confer upon him any such privilege. We must administer the lex loci here, and not the law

which the defendant may assume to make for his case. And then again, if the tort is several, it is also joint; and when the plaintiff has joined all the wrong-doers, it is clear, that they have a joint interest in the event of such suit. They are jointly liable for the damages, which may be assessed against them by the jury; and if they sever in their pleadings, or the jury assess different damages against them severally, the plaintiff has a right to a joint judgment de melioribus damnis. 2 Tidd, Prac. 804, 805; Heydon's Case, 11 Coke, 7; Sabin v. Long, 1 Wils. 30; Johns v. Dodsworth, Cro. Car. 192, 193. So, that it is difficult to maintain the position, that in this case the defendant has a separate and distinct interest from the other defendants throughout. On the contrary, for the general purposes of the suit, he has a joint and common interest with them.

The distinct and separate interest referred to in Strawbridge v. Curtis, is one, which constitutes the sole interest in the cause, all the other parties being merely nominal; or a distinct and separate interest, in no sense and under no circumstances connected with that of other persons. If a party has a distinct and separate interest, and also a joint interest, as where he is sued upon his joint and several bond, it has never been supposed, that the general rule laid down in that case did not apply. Thus, for example, in the case of Cameron v. McRoberts, 3 Wheat. [16 U. S.] 591, where the suit was a bill in equity against Cameron and two others, whose citizenship was not stated, the court said: "If a joint interest vested in Cameron and the other defendants, the court had no jurisdiction of the cause. If a distinct interest vested in Cameron, so that substantial justice, so far as he was interested. could be done without affecting the other defendants, the jurisdiction might be exercised as to him alone." And it is most material to remark, that this case and all the others, in which a separate and distinct interest, or a nominal interest. is spoken of, were bills in equity, capable in their own nature of separate and distinct decrees upon separate and distinct interests, where there was, or might be, no community of interest, and where the general question was presented as to the proper parties necessary to be made in a suit in equity. Very different considerations do, or at least may apply, to suits at common law, where the nonjoinder or misjoinder of parties has a very different effect upon the character of the suit, and very different rules apply to it. This is abundantly evident from what is stated in Wormley v. Wormley, 8 Wheat. [21 U. S.] 451; Carneal v. Banks, 10 Wheat. [23 U. S.] 181; Dunn v. Clarke, 8 Pet. [33 U. S.] 1, and Boone's Heirs v. Chiles, 8 Pet. [33 U. S.] 532. In Corporation of New Orleans v. Winter, 1 Wheat. [14 U. S.] 91, where a citizen of a state and a citizen of a territory sued as joint plaintiffs, the jurisdiction was held to be gone. The court said:

"In this case it has been doubted, whether the parties might elect to sue jointly or severally. However this may be, having elected to sue severally, the court is incapable of distinguishing their case, so far as respects jurisdiction from one, in which they were compelled to unite." So here, upon like grounds, it may be said, that being united compulsively by the plaintiff, the defendants are to be treated throughout as being joint and proper parties in the suit.

But if these difficulties in the case could be overcome, there are others, which, upon the construction of the 12th section of the act, seem absolutely insuperable. In the first place, the act contemplates, that the removal of the cause is to be with the joint assent of all the parties defendant; for it can scarcely be treated as a privilege of one defendant, exclusive of the others. Suppose the present suit were brought against several aliens, or several citizens of another state, and some of the defendants were in favor of a removal of the suit from the state tribunals, and others against it, which of them are to prevail? The act seems intended to give an option to the party defendant, which may be exercised or not, at the pleasure of all standing in the same predicament. But if one may remove without the consent of the others, then, the option may be defeated at the pleasure of one only. My Brother, Mr. Justice Thompson, has put the case strongly, in delivering the opinion of the court in the case of Ward v. Arredondo. "Can," (said he) "then one of the alien defendants compel his co-defendant to follow him into this court against his will? We put the case thus strongly in order to test the principle. And we cannot discover any satisfactory ground, upon which such a doctrine can be sustained. The judiciary act considers the removal of the cause as the voluntary act of the party on his petition. By the word party, as here used, must necessarily be understood, the defendant, embracing all the individuals, be they more or less, constituting such party." This reasoning upon the face and purport of the act appears to me to be unanswerable in the case put. It equally, in my judgment, applies to every other case, where all the defendants have not (as they have not in the present case) petitioned for the removal. The application must be joint, for the benefit of all, and with the consent of all. Indeed there is a more urgent ground for its application, if the suggestions, already made, are well founded; for the defendants in this case, who are citizens of Massachusetts, are per se, incapable of removing the suit. Can they be placed in a better predicament, than if they had united in the petition with one, who was a citizen of another state, and therefore capable?

And this leads me, in the next place, to the consideration, which has been so strongly urged at the bar, as to the right of removal of a cause in part from a state court, leaving it still, as to other parties, depending therein. It appears to me, that the very terms of the act prohibit any such partial removal of a suit. It declares, that when the petition and surety are properly offered and given, "it shall then be the duty of the state court to accept the surety, and proceed no farther in the cause," which language necessarily supposes an entire removal of the cause, and not a removal of it as to some parties only. The circuit court, too, is to proceed therein in the same manner, as in original suits commenced in that court. So that in all cases, where the local law would govern in the decision upon the forms or merits of the proceeding in an original suit, it must in like manner govern in those forms and proceedings in the removed suit. It is plain, that there can be nothing in the nature of a summons and severance in the suit; for that supposes that some parties have a right to proceed to establish their claim as plaintiffs, there being other parties necessary to be joined in point of form as plaintiffs, who are unwilling to proceed at all. Such a proceeding is never allowed as a severance of a suit at the common law, as to the parties defendant, so as to make two several suits out of one joint suit.

But independent of the language of the act, how would it be possible, upon any acknowledged principles of law, to proceed in this suit in the state court, as to some parties, and in this court as to other parties, treating it (as it certainly must be treated) as a joint suit, upon which there may be a joint, as well as a several judgment? Consider, for a moment, the posture of the case, if the suit is removed as to Rines, and is still proceeded in in the state court, as to all the other defendants, upon whom process has been served. Both courts must render such a final judgment upon the whole cause of action, as the local law (which in this case is the common law) requires, upon the whole record. The final judgment must be just such a judgment as would be warranted by law, if all the parties were before either court, and there had been a final trial as to all the defendants, upon joint or separate pleadings. Now, the first difficulty, which occurs is, how, after the removal of a part of the cause from the state court to the circuit court, either court can, judicially, know what is finally done as to the residue by the other court. The further proceedings in either court, after such a removal, constitute no part of the record of the proceedings of the other court; and no process of certiorari lies to bring them before the other. Suppose, that all the defendants in the state court should be convicted on trial, and damages of one thousand dollars be jointly assessed against them by a jury; and suppose, that damages should, in like manner upon trial, be rendered against Rines in the circuit court, more or less than the damages assessed in the state court, what judgment is to be rendered? The plaintiff, in such a case, would by law be entitled to a joint judg-

ment against all the defendants, de meliori-
bus damnis. Where on the record of either
court could be found the materials for such
a judgment? Nay more; where could be
found the materials to show, that any verdict
at all had been rendered in the other court?
Suppose, some of the defendants in the state
court should be acquitted, and others con-
victed, and damages assessed against the lat-
ter in the state court, and damages also as-
sessed against Rines in the circuit court to
the same amount, or to a greater or less
amount, what judgment is to be rendered in
either court? It is plain, that the plaintiff
would be entitled to a joint judgment against
all the defendants, who were connected, and
against execution. But in what manner can
either court proceed to enter such a judg-
ment, there being on its own records no proof
of the proceedings in the other court? Sup-
pose, Rines, upon a trial here, should be ac-
quitted, and some of the defendants in the
state court should also be acquitted, and oth-
ers convicted, what is to be done? We all
know, that if the final judgment in the cause
were wholly in either court, it would be a
general judgment, that all the defendants ac-
quitted should go without day; and that the
plaintiff should recover his damages against
the others. A several judgment as to some
of the defendants, without disposing of the
others, would, upon the clearest principles of
the common law, be bad and unwarrantable.
In the case supposed, in what manner is ei-
ther court to render such a general judgment
as to all the parties?

I have stated these difficulties, because they
are the very difficulties, which, in the farther
progress of the cause here, if we could main-
tain jurisdiction over it, may, nay, must arise.
I know not, how they are to be overcome. In-
deed, the only possible manner, in which a
removal by one defendant to this court could
be sustained, either in an action of contract,
or of tort, would be by considering such a
removal as ending the suit as to all the other
parties, and taking from the plaintiff his
right to a joint action. There is certainly no
authority for that; and I know no principle
to justify it. My Brother Washington, in
Beardsley v. Torrey [Case No. 1,190], held,
that a suit, if removable at all, must be en-
tirely removed. It cannot be severed, and a
part only removed. "Not only," said he,
"would such a doctrine be attended with ab-
surdity and inconvenience; but it would be
repugnant to the language and to the clear
meaning of the 12th section" of the act of
congress. Notwithstanding the criticism be-
stowed at the bar upon this case, it appears to
me directly in point. And that most learned
and pains-taking judge added (what is equal-
ly in point in this suit), that there was an-
other reason, why the circuit court could not
take cognizance of the cause, as a removed
cause, which was, "that S. (one of the de-
fendants) did not join in the petition for the
removal; and it is not competent for one de-

fendant to remove the cause, without the
consent of all the defendants."

But it has been said, that if one defendant
alone cannot, under the act of congress, re-
move a suit into the circuit court, the consti-
tutional provision may be evaded at pleasure,
as to suits between citizens of different states
being cognizable in the courts of the United
States; for persons may fraudulently be
made nominal defendants for the very pur-
pose of preventing a removal of the suit. If
such a case should arise (for in this case it
is not pretended) of a fraudulent joinder of
parties for such a purpose, it would deserve
consideration, whether the jurisdiction of
this court could be so evaded; and whether,
in furtherance of justice, under such circum-
stances, the injured defendant might not have
some remedy at law or in equity (by way of
injunction or otherwise), to reach the mis-
chief. But if the mischief in such a case
should be admitted to be irremediable, that
is a consideration properly addressing itself
to the national legislature to provide suitable
means of redress for it. It is not for courts
of justice proprio marte to provide for all
the defects or mischiefs of imperfect legisla-
tion.

Upon the whole, my opinion is, that this
suit must be remanded to the state court. If
I entertained any doubt upon the subject
the deliberate opinions of my Brothers Wash-
ington and Thompson would be decisive with
me. But I confess, that as an original ques-
tion, I should have entertained the same view
of the matter; and the weight of their au-
thority ought, under these circumstances, to
be quite conclusive with me.

Suit remanded to the state court.