# REPORTS

OF

# CASES ARGUED AND DETERMINED

## AT THE JUNE TERM, 1867.

————•—————

## EX PARTE ANDREWS & MOTT.

[APPLICATION FOR MANDAMUS TO CIRCUIT COURT.]

1. *Removal of pending suit from State into Federal court.*—To authorize the removal of a pending suit from the State court, in which it originated, into the Federal court of the district, under the provisions of the act of congress approved July 27, 1366, (Acts of 39th Congress, p. 306,) it must be shown that the suit "is one in which there can be a final determination of the controversy, so far as it concerns" the defendant applying for the removal, "without the presence of the other defendants as parties in the cause"; consequently, where the action is in tort against several defendants for a conspiracy, there can be no removal. (BYRD, J., *dissenting.*)

2. *Same.*—To authorize the removal of such suit under the provisions of the act of congress approved March 2, 1867, (Acts of 39th Congress, p. 558,) all the defendants must be non-residents of the State in which the suit is instituted.

APPLICATION by Rufus F. Andrews and Charles A. Mott, for a *mandamus* to the circuit court of Montgomery, Hon. GEO. GOLDTHWAITE, presiding, requiring that court to transfer to the Federal court of the district a certain suit pending in said circuit court, wherein Elmore, Keyes & Morrisett were plaintiffs, and said Andrews and Mott were defendants jointly with Richard Busteed. That action was commenced, as is shown by the transcript which was made an exhibit to the petition, on the 3d June, 1867; and the complaint was in the following words:

" The plaintiffs claim of the defendants twenty thousand dollars, as damages for the wrongful, malicious, and corrupt confederation, agreement, and conspiracy with each other, to defraud and injure the plaintiffs as hereinafter set forth. During the November term, 1866, of the district court of the United States, for the middle district of Alabama, there were pending in said district court, in favor of said Mott, a suit in equity against Robert S. Williams and others, and two suits at law against said Robert S. Williams; and the plaintiffs in this present action were attorneys at law and solicitors in chancery, duly admitted, and were regularly retained and employed as attorneys and solicitors of said Mott, in each of said suits in said district court; and during said term of said district court, and whilst the plaintiffs in this suit were the attorneys at law and solicitors in chancery, duly employed and retained as such for and by said Mott, in the said suits of said Mott, the said Mott and the defendants in said suits of said Mott, which were in said district court, made a special agreement for the compromise and dismissal of said last mentioned suits; which last named agreement was afterwards fully complied with by said last named defendants; and after such compliance, to-wit, on the 13th May, 1867, the said Mott acted on and accepted said compliance, and dismissed his said suit in equity. Under the said special agreement for the said compromise and dismissal, and in pursuance of its terms, and in compliance therewith, the said defendants in said suits which were in said district court, by their duly authorized agents, delivered to said plaintiff Elmore, one of the attorneys and solicitors of said Mott, and as such attorney and solicitor, ten thousand dollars in gold coin of the United States, and a promissory note, executed by Thomas Williams on the 2d day of January, 1867, with interest from its date; and at the time of said delivery, the plaintiffs in this suit continued to be, and were, the attorneys and solicitors of said Mott as aforesaid; and from the time of said delivery, the said Elmore held the coin and note, delivered to him as aforesaid, subject to the lien which the plaintiffs, as attorneys and solicitors of said Mott as aforesaid, had and were entitled to thereon for the indebtedness

of said Mott to them, for their retainer and services and work and labor as his said attorneys and solicitors as aforesaid, in said suits which were in said district court; which indebtedness of said Mott to them was, and is, five thousand dollars, and is wholly unpaid and still due. Afterwards, and whilst said Elmore was continuing to hold said gold coin and note as aforesaid, and after said dismissal of said suit in equity, the said defendants in this suit—that is to say, the said Busteed, Andrews, and Mott—well knowing the premises, and with notice of all the facts herein above stated, contriving and intending to injure and aggrieve the plaintiffs, and to prevent the payment of said indebtedness of said Mott to the plaintiffs, and to defraud them thereof, and of the said lien and security for the said indebtedness, and the payment thereof, conspired with each other, unlawfully, and by unlawful and corrupt means, and by the corrupt abuse of the office of judge of said district court, then held by said Busteed, and by the usurpation of authority and power over said coin and note, as well as over said Elmore, by said Busteed as judge of said district court, which has never been vested in said judge or district court by the law of the land; and, in pursuance of said conspiracy, and in execution thereof, the said defendants, Busteed, Andrews, and Mott, did, by their unlawful and corrupt means aforesaid, and the usurpation aforesaid, and the corrupt abuse of the office aforesaid, deprive the said Elmore of the said coin and note, and did take control of said coin and note, and convert the same to their own use, whereby the plaintiffs have lost their said lien and debt, and have sustained damages to a large amount—that is, twenty thousand dollars, for which they here now sue."

The summons was served on all the defendants on the same day on which it was issued. On the 25th June, 1867, said Andrews and Mott each filed his petition in the office of the clerk of said circuit court, addressed to the judge thereof, praying the removal of the cause into the Federal court of the district, on the ground that, "from prejudice and local influence," they would not be able to obtain justice in said circuit court. Each of the petitions alleged, that the plaintiffs in the suit were citizens of Alabama, and

the petitioners citizens of New York; that the matter in dispute, exclusive of costs, exceeded five hundred dollars; that the petitioner had reason to believe, and did believe, that, from prejudice and local influence, he could not obtain justice in said circuit court; and each was accompanied by an affidavit, made before the clerk of the United States district court, in which the petitioner swore to the truth of the facts stated in the petition. The following quotations, the first being taken from the petition of Andrews, and the second from the petition of Mott, show the only differences between the two petitions: "And petitioner prays, that said suit may be removed into the next *district* court of the United States, to be held in the district where said suit is pending; and he herewith offers good and sufficient security for his entering in said court, on the first day of its session, copies of all process, pleadings, depositions, testimony, and other proceedings in said suit." "And petitioner prays, that the said suit may be removed into the next *circuit* court of the United States, to be held in the district where the said suit is pending; and your petitioner offers good and sufficient surety for his entering in said United States court, on the first day of its session at the next ensuing term thereof, copies of all processes, pleadings, depositions, testimony, and other proceedings in said suit, and doing such other appropriate acts as by the act of congress approved July 27, 1866, entitled 'An act for the removal of causes in certain cases from State courts,' and an act of congress amendatory of said act, approved March 2, 1867, are required to be done by your petitioner, as defendant as aforesaid, upon the removal of a suit into the United States court as aforesaid."

On the hearing of the motion, on the 26th June, 1867, as the bill of exceptions shows, it was proved to the court, that the plaintiffs were citizens of Alabama; that the petitioners were citizens of New York; that Richard Busteed was a citizen of Alabama; and that the amount in controversy, exclusive of costs, was over five hundred dollars. The bill of exceptions states, also, that the petitioners "offered good and sufficient surety for their entering in said United States court, at the first day of its session, copies of the summons

and complaint, and all pleadings, depositions, testimony, and other proceedings in said suit." Both the bill of exceptions and the judgment-entry state, that the petitioners asked the removal of the cause into the *circuit* court of the United States. The circuit court overruled the motion, and the petitioners excepted to its decision.

F. BUGBEE, and J. Q. SMITH, for the petitioners.

WATTS & TROY, and RICE, SEMPLE & GOLDTHWAITE, *contra*.

A. J. WALKER, C. J.—An action in tort was brought by citizens of the State of Alabama, against three defendants. Two of the defendants, alleging that they are citizens of another State, and that the amount in controversy exceeds five hundred dollars, asked of the court below a transfer of the cause into the circuit court of the United States. The circuit court overruled the application, and motion is now made to this court for a *mandamus*, requiring that the application for removal should be granted. A careful consideration of the subject fully convinces us, that the ruling of the circuit judge was correct, and that he could have made no other ruling, consistently with the practice and decisions in the Federal tribunals.

There are two acts of congress, to which the applicatino for a transfer may refer. Those two are the act approved July 27, 1866, and the act approved March 2d, 1867. The right to a transfer under each of these acts we will consider in the order of their dates.

The act of congress of 27th July, 1866, provides, that when there is a suit in a State court, in favor of a citizen of the State, against another citizen of the State and a citizen of some other State, and the matter in dispute exceeds five hundred dollars, a transfer of the cause, as against the defendant who is a citizen of another State, may be had upon the prescribed application and conditions, "if the suit is one in which there can be a final determination of the controversy, so far as it concerns him, without the presence of the other defendants as parties in the cause." One essentail element of the case for a transfer is, that after the removal of the cause, as to the defendant who is a citizen of

another State, "there can be a final determination of the *controversy*, so far as it concerns him, without the presence of the other defendants." The controversy here intended is the dispute between the parties. To ascertain what is the controversy or dispute, we must inquire what is asserted and denied, what is claimed and resisted. If there cannot be a final determination, after the removal as to the defendants seeking it, of what is asserted and claimed by the plaintiff, then the above specified element of a case for removal is wanting. We must, then, inquire what the plaintiff asserts and claims.

The action is in trespass on the case, for an injury to the plaintiffs, to do which the three defendants are alleged to have conspired. The question, what is the controversy or dispute in such a case, is settled by Judge Story, in a luminous and elaborate opinion in the case of *Smith v. Rines*, 2 Sumner, 338. In that case, one of several defendants, being a citizen of another State, in an action strikingly analogous to this, asked a transfer to the Federal court; and Judge Story decided, that he was not entitled to it. The motion for a transfer in that case was made under the twelfth section of the act of 1789, and not under the acts in reference to which the motion here is made. We therefore do not refer to it as defining the class of cases embraced by the acts which we are considering. But Judge Story found it necessary, in reaching his conclusion, to examine the nature of the action, and to define the relations of the parties to it; and that part of his opinion has an immediate and obvious bearing upon the question under examination. It is decided in that case, upon indisputable authority and reasoning, that the plaintiff's right of action was joint or several, at his election—that he could proceed against all the wrong-doers, or against any one or more of them, at his election; that he had a right to proceed for a joint judgment against all the defendants, and that this right could not be taken away by the defendants. The opinion further ascertains, that the plaintiff has a right to seek a joint judgment for damages, and that the defendants have a joint and common interest in defeating the plaintiff's claim of a joint judgment against them. This opin-

ion but gives expression to an old doctrine of the common law. This is shown by the resolution in *Heydon's case*, (11 Rep. 5,) that " when in trespass against divers defendants, they plead not guilty, or several pleas, and the jury find for the plaintiff on all, the jurors cannot assess several damages against the defendants, because all is one trespass, and made joint by the plaintiff by his writ and declaration." To the same effect are the decisions of this court in *Lyman v. Hendrix*, 1 Ala. 212, and *Callison v. Lemons*, 2 Porter, 145.

It is clear, from the authorities above noticed, that the plaintiffs' demand is for a joint judgment against all the defendants, for the whole of which there would be a liability of each and all, to be enforced by execution. In this action, there is no assessment of damages separately against the defendants. The theory of it is, that the plaintiff has sustained damage, and for it demands by his complaint the joint liability of all the defendants. This is the controversy which the plaintiff, by his action, initiates. There can be no final determination of this controversy, if the case as to two of the defendants is segregated and transferred into another tribunal. Indeed, after such transfer, there can be no trial or determination of that controversy. It ceases to be a controversy in which the plaintiff strives for a joint judgment against all the defendants. By the transfer, he is absolutely precluded from making the demand, or asserting the right, which initiates and constitutes the controversy. The one controversy would become two by the transforming power of the law ; in one of which, he would seek a judgment against one defendant, in the State court; and in the other, a judgment against two defendants, in the Federal court. It is clear that, in this case, there can be no final determination of the controversy as to two of the defendants, without the presence of the other. Judge Story, in *Smith v. Rines, (supra,)* demonstrates and illustrates the impossibility of a judgment as upon a joint cause of action, partly in the State court, and partly in the Federal court.

The act of 27th July, 1866, is a mere regulation of jurisdiction. It was not designed to deprive a party of any

right which the law bestows, or of the privilege of demanding at the bar of some legal forum any judgment which the law gives him a right to demand. The plaintiffs have a legal right to demand a joint judgment against all the alleged participants in the tòrt, and to have a legal adjudication upon it. Of that legal right he would be stripped by the transfer of his case, as to two defendants, into the Federal court. The whole case can not be transferred into the Federal court, and there tried; because, one of the defendants being a citizen of Alabama, that court could have no jurisdiction as to him. The theory which would sustain the motion here, would, to the reproach of the law and the law-makers, develop a case where there is a legal right with no forum in which to assert it. This result, so hostile to justice, and so discreditable to our law, is avoided by the careful exception from the operation of the law of those cases where the controversy can not be finally determined without the presence of all the defendants; and in the avoidance of such a result that provision of the law was designed to operate.

The question may be asked, what class of cases falls within the scope of this act of congress, if this case does not. In the case of *Strawbridge v. Curtis*, Chief-Justice Marshall made an intimation, that while, as a general rule, jurisdiction dependent upon citizenship could only be sustained where all the parties on the same side were competent to sue, or liable to be sued; yet a different rule might prevail, where several parties represented several distinct interests, and some of those parties were, and others were not, competent to sue, or liable to be sued, in the courts of the United States. Judge Thompson, in *Ward v. Arredondo*, (1 Paine, 410,) intimated that there might be cases in equity where several parties represent distinct interests, so that separate decrees might be made, where possibly some of the parties might take the cause into the circuit court, and others remain in the State court; but that it ought, even in such cases, to be a very strong case of separate and distinct interests to sanction such a course. See, also, *Cameron v. McRoberts*, 3 Wheaton, 591.

Judge Story, remarking upon the antecedent cases

Ex parte Andrews & Mott.

touching this subject, said, "that all the cases in which a separate and distinct interest, or a nominal interest, is spoken of, were bills in equity, capable in their own nature of separate and distinct decrees, upon separate and distinct interests, where there was, or might be, no community of interest, and where the general question was presented as to the proper parties necessary to be made in a *suit in equity*"; but that " very different considerations do, or at least might, apply to suits at common law, where the nonjoinder or misjoinder of parties has a very different effect upon the character of the suit, and very different rules apply to it."

From these authorities it is apparent, that a class of cases had been mentioned in the opinions of the Federal judiciary, which ought to constitute exceptions to the general rule, that the character of citizenship requisite to give jurisdiction should be common to all the plaintiffs or defendants. That class embraced those cases where the interests of the parties were so entirely distinct, that a judgment or decree could be rendered in reference to a part without affecting the others. No distinct regulation was made in reference to those cases, until the act of 27th July, 1866, was passed; and it is a fair inference, that that act was designed to provide for those cases which had been the subject of judicial comment. In that class of cases we find a field of operation for the act of congress. Its operation must be chiefly confined to chancery cases, as intimated by Judge Story. It may be that actions at law may be found, either at common law, or authorized by statutes in some of the States, which would be included. It is probable that actions of ejectment may arise in a State court, where the interest of one defendant is so distinct as that it may be transferred without affecting the others. For example, in the case of *Rowland and Heifner v. Ladiga*, (21 Ala. 9; *S. C.*, 2 Howard,) a plaintiff having the same title to an entire tract of land sued the two owners of distinct parts of it. If one of those defendants had been a citizen of another State, the suit might have been transferred as to him, because there was no community of interest between the two defendants, and no right in the

plaintiff jointly against them. Our view leaves a clear and distinct operation for the act of congress in chancery cases. *Fleming v. Gilmer*, (35 Ala. 62,) presents a case in which a bill was held not to be multifarious, and yet the interest of at least one of the defendants was so distinct and separate from that of the other defendants, that it might have been taken out of the case, and transferred to another forum, without affecting the rights of the parties. Many more cases, of like character, might be adduced. Besides, it is often the case in chancery, that parties are proper but not necessary. When that is the case, the defendant in interest being a citizen of another State, and joined with a citizen of the State who was a mere formal party, a transfer could be made.

If we should take the view of the act of 1866 relied upon by the parties making the motion, we should regard the law as unconstitutional. The plaintiff's common-law right is to have his demand for a joint judgment passed upon. What provision of the constitution can be found, which gives to congress the power to take away that right? The constitution provides, that the judicial power of the United States "shall extend to controversies between citizens of different States." The judiciary act of 1789 gave the circuit courts jurisdiction, where "the suit is between a citizen of the State where the suit is brought, and a citizen of another State." The act of 1789, therefore, does not occupy the entire ground of the constitutional power of the United States; for it requires that the party on one side should be a citizen of the State where the suit is brought. But there is a perfect accord and equality of extent between the constitution and the act of congress, in requiring that the two sides of the case should be occupied by citizens of different States.

It has been repeatedly held, under the act of congress, indispensable to the jurisdiction of the Federal court, that the citizenship requisite must be common to all the parties joining as plaintiffs, or joined as defendants. The only exceptions to the general rule ever intimated are cases, where the persons joined without the requisite citizenship were either merely nominal parties, or parties who did not pos-

Ex parte Andrews & Mott.

sess such an interest as to prevent a decree or judgment being rendered without affecting them, for or against parties possessing the requisite jurisdictional citizenship.—Conkling's Treatise, 143, 155; *Ward v. Arredondo*, Paine, 410; *Strawbridge v. Curtis*, 3 Cranch, 267; *Smith v. Rines*, 2 Sum. 338; *Cameron v. McRoberts*, 3 Wheat. 591; *Beardsley v. Torrey*, 4 Wash. C. C. R. 286.

When the constitution says, that the judicial power of the United States extends to controversies between citizens of different States, it is in this regard to be construed in the same manner with the act of congress. It does not mean, that the controversy must be partly with citizens of different States. It must be under the constitution, as under the act of congress, wholly with citizens of different States. Where there is a plurality of plaintiffs, or of defendants, each one must possess the requisite character as to citizenship to sue or to be sued.—Conkling's Treat. 143. If the suit can be split up into distinct controversies, one or more persons possessing the requisite jurisdictional character, and being interested alone in a matter of controversy distinct and separate from those not possessing such character, could not be deprived of their right to the jurisdiction of the United States courts by the joinder of such other persons. This leaves the constitution to operate over the question of the jurisdiction of controversies, and not over questions of rights of action between man and man. The judicial power of the United States does not extend to cases in which citizens of a State sue citizens of the same State and citizens of another State, and the plaintiff's demand against all the defendants is joint, and incapable of separation and division by the defendants.

If it were doubtful whether the act of 1866 should be construed to embrace this case, it would be a judicial duty to maintain the constitutionality of the law by avoiding that construction; but we think it plain that the act of congress is not susceptible of such a construction.

2. We come now to consider the question of the right of the parties to the removal of the cause into the Federal court under the act of March 2d, 1867. This act provides, that a party plaintiff or defendant in a State court, being

a citizen of another State, upon complying with the other requisitions of the statute, and making a prescribed affidavit in reference to adverse prejudice or local influence, may obtain a transfer of the cause. The parties have made the prescribed affidavit, and insist that they are entitled to a removal of the cause under this act, if not under that of 1866. This act (March 2, 1867), unlike the other, contempletes the removal of the entire case, and not merely in so far as it affects the citizens of another State. Like the 12th section of the judiciary act of 1789, it directs that when the removal is made, the court shall proceed no further in the suit. Under the act of 1789 it is settled, that there could be no removal of the cause, when any one of the joint parties is a citizen of the State where the suit is pending.—*Smith v. Rines, supra ;* Conkling's Treat. 154 ; *Beardsley v. Torrey,* 4 Wash. C. C. R. 286. The rule is established in the jurisprudence of the United States, relative to suits instituted in its courts, and to suits removed under the 12th section of the judiciary act, "that when the jurisdiction depends upon the character of the parties, all the individuals composing the respective parties plaintiff and defendant must possess the requisite character." The same rule must be applied to removals under the act of 1867. There is nothing which can distinguish such removals from those under the act of 1789. The decisions upon the point are conclusive. A different ruling would lead to the absurdity of transferring the case, as to the defendant who is a citizen of this State, into a court which would have no jurisdiction of it, and yet forbidding the prosecution of the suit in the State court.

The motion for a *mandamus* is overruled.

BYRD, J.—I think it is too narrow and technical a construction to give the petitions and bill of exceptions, to hold that the application is for the removal of the suit as to all the defendants. It is true, that the petitioners might have been more explicit and definite ; yet, construing their application for the removal of the suit with reference to the acts under which it was made, it would harmonize more with our liberal system of judicial proceedings, to hold that

the application was made to remove the suit as to themselves ; and the fact stated in the bill of exceptions, that one of the parties defendant is a resident of this State, would indicate that such should be the construction of the application to remove the suit. In such preliminary proceedings, it is not usual to resort to much nicety or strictness in the interpretation of them, but a liberal construction will always be adopted to promote the ends of justice. I therefore think, that the application in the court below is sufficiently certain and definite, to entitle the petitioners to the removal of the suit as to themselves, if their application and affidavits bring them *within the provisions of the acts of congress of July*, 1866, *and March*, 1867, *and those acts are constitutional.* This disposes of the first objection to the granting of this application.

It is said that this case does not come within the scope of the acts of congress of 1866–67. It is evident that it is not included within the provisions of the 12th section of the judiciary act of 1789.— *Wilson v. Blodgett*, 4 McLean, 363 ; *Smith v. Rines*, 2 Sum. 338 ; *Strawbridge v. Curtis*, 3 Cranch, 267 ; *Beardsley v. Torrey*, 4 Wash. 286 ; *Dennison v. Potts*, 11 Sm. & Mar. 36 ; *James and Wife v. Thurston et al.*, 6 Rhode Island, 428.

The language of the last act is : " If a suit be commenced in any State court, against any alien, or by a citizen of the State in which the suit is brought, against a citizen of another State." I think that, upon this clause of this act, there can be no doubt of the correctness of the doctrine laid down in the cases cited, *to the extent* that, where the resident of a State was sued jointly with the resident of another State, the latter could not remove the case, as to himself, to the United States circuit court for the district where the suit was pending. And in my opinion, these decisions were the principal cause of the passage of the acts of 1866–67.

If Judge Story, in the case of *Smith v. Rines*, (2 Sumner,) had contented himself in putting that case upon this well-recognized doctrine, it would have relieved him from the learned discussion of the peculiar features of that case, which were very similar to those of this case. For it made

no difference, whether the defendants were sued in an action at law, on a demand or tort which was joint, or joint and several, or several only. If one was a resident of the State where the suit was brought, the non-resident defendant would not, under the act of 1789, have any right to a removal of the cause as to himself. But even the *dicta* of that eminent jurist are justly entitled to great weight.

But it seems that, even under the act of 1789, a part of the defendants in a suit in equity might remove the suit, as to themselves, under certain circumstances, from the State to a Federal court, in the mode indicated in the case of *Ward v. Arredondo*, (1 Paine, 410,) and therefore the act of 1866 was not passed to apply to cases covered by that decision.

The act of 1866 provides, "that if any suit already commenced, or that may hereafter be commenced, in any State court, against an alien, or by a citizen of the State in which the suit is brought against a citizen of another State, and the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs, to be made to appear to the satisfaction of the court, a citizen of the State in which the suit is brought, is or shall be a defendant; and if the suit, so far as it relates to the alien defendant, or to the defendant who is the citizen of a State other than that in which the suit is brought, is or has been instituted, or prosecuted, for the purpose of restraining or enjoining him; or if the suit is one in which there can be a final determination of the controversy, so far as it concerns him, without the presence of the other defendants as parties in the cause; then, *and in every such case*, the alien defendant, or the defendant who is a citizen of a State other than that in which the suit is brought, may, at any time before the trial or final hearing of the cause, file a petition for the removal of the cause, as against him, into the next circuit court of the United States to be held in the district where the suit is pending," &c. It is unnecessary to set out any of the other provisions of the act, though they may be referred to hereafter.

An act amendatory of the above act was passed into a law on the 2d March, 1867; but I can see nothing in it which bears on the questions before us, except that the affi-

davit in this case is, in substance, the one prescribed by the amendatory act.

No affidavit was required by the act of 1866; and it may be held that no application, made under it, should be granted, without the affidavit required by the act of 1867. However this may be, it seems to me that the filing of such an affidavit can not affect the right a defendant has, under the act of 1866, to a removal of the suit, as to himself; and, therefore, I will not notice this matter any further, and will proceed to consider whether the parties have brought themselves within the provisions of the act of 1866, or so much thereof as is above set forth.

The plaintiffs in this suit are residents of Alabama; the defendants, Andrews and Mott, are citizens of another State; Judge Busteed is a citizen of Alabama; Alabama is a State of the Union, and the circuit court of Montgomery county is a court of this State. So far the case is literally within the terms of the act. The matter in dispute "exceeds the sum of five hundred dollars, exclusive of costs." The defendants, Andrews and Mott, have filed their petition within the time prescribed by the act, for the removal of the cause, as against them, into the next circuit court of the United States, to be held in the district where the suit is pending, and offered to give the surety required to be given by the act. Therefore, the subject-matter is covered by the act of 1866, and the applicants have done and offered to do all that is required by the act, as a condition precedent to the right to an order of removal.

But it is said, that the suit is not one of the character, in which an order of removal is authorized by the act; and that part of the act in these words, "*or if the suit is one in which there can be a final determination of the controversy, so far as it concerns him, without the presence of the other defendants as parties in the cause*", is relied upon in support of the above proposition. The material question in this case arises on the proper construction of this clause.

Can there be a " final determination of the controversy, so far is it concerns' Andrews and Mott, "without the presence" of Judge Busteed "in the cause"? There can be no question about the right of the plaintiffs at common

41

law, and under the laws of this State, to bring an action of the nature of the one brought against the parties to this suit; and it is equally clear that the plaintiffs could have brought a similar action against each defendant in the State courts, and have a final determination as to him, without the presence of the other parties; or the plaintiffs could have brought an action against each or both of the non-resident defendants in the Federal courts, and an action against Judge Busteed in the State court, and have had a final determination, as far as each was concerned, without the presence of the other parties. If so, what prevents a removal of the cause as to Andrews and Mott, to the circuit court of the United States for this district? The act of 1866 provides, that "such removal of the cause, as against the defendant petitioning therefor, into the United States court, shall not be deemed to prejudice or take away the right of the plaintiff to proceed at the same time with the suit in the State court as against the other defendants, if he shall desire to do so"; which shows how careful congress was in protecting the rights of plaintiffs residing in a State where the suit is brought, while at the same time attempting to secure what in its wisdom was supposed to be the constitutional rights of non-resident defendants. This last recited clause of the act is persuasive to show that congress intended the act to apply to suits brought upon demands, or for torts, where the remedy against the defendants was either joint and several, or several. If several, this clause would be without meaning; but if joint and several, then it is most appropriate and applicable to such a suit. The words of the act, "in any suit", "in any State court", "and in every such case", are too broad to be confined to any class of suits or courts. It applies as well to suits on a cause of action which is joint, as on one that is joint and several; and as well to courts of law as courts of equity. The reasoning of the learned judges, in cases arising under the act of 1789, I submit, has no application to the language of the acts of 1866–67. I am therefore of the opinion, that those acts cover this case in all its parts; and the reasoning of Judge Story, in his Commen-

taries on the Constitution, fully sustains the views presented on this branch of the case.—Vol. 2, §§ 1690–5.

I have said that the acts of 1866 and 1867 apply to suits in which the cause of action is joint, as well as joint and several. But it only applies to such suits where there "can be a final determination of the controversy without the presence of the other defendant." I know of no joint and several action where this cannot be done. But there are some joint causes of action which cannot be finally determined without the presence of all the defendants, or their representatives. Of this class is a suit in equity by one partner, against the others, to settle the partnership business; or a suit by a creditor of a partnership, or a suit by or against joint administrators, &c., unless some statutory provision authorizes a severance. It is unnecessary to enumerate the cases of joint causes of action, in which the law requires the presence of all the parties as necessary to the determination of the controversy; but it never requires their presence in the determination of causes of action which are joint and several. In the class of joint causes of action referred to, I find an ample field for the operation of the clause of the act of 1866, last above recited.

If this construction of the acts in question is correct, the further question of their constitutionality, or the power of congress to pass them, is presented for consideration. As the counsel for the applicants justly remarked in argument at the bar, this is a question of great delicacy at this period of our history. But still, it is one which must be fairly and unflinchingly met, discussed, and decided, whatever inferences, prejudicial to the court or judge, may be indulged by parties to either side of the late unfortunate and disastrous civil war.

The constitution of the United States (§ 2, art. iii) confers jurisdiction upon the Federal courts of controversies "between citizens of different States." It has been settled by a long and uniform train of decisions, that the Federal and State courts have concurrent jurisdiction of controversies between citizens of different States, in such cases as congress by law has conferred such jurisdiction on the Federal courts. It is admitted, that the acts of congress have not

yet covered all the ground included within the power conferred by the 2d section of the 3d article of the constitution; for there is no act which authorizes the removal of a suit commenced in a State court, by a non-resident of such State, against a non-resident of the same State, or against a resident and non-resident of such State. Congress has not filled the measure of its power conferred by the constitution over this subject.—*Hubbard et al. v. The Nor. R. R. Co.*, 25 Verm. 715; *Welch v. Tennent et al.*, 4 Cal. 203. It seems to me that it would have been more consistent with principle, and would have worked more harmoniously in practice, if the courts had held that the jurisdiction of the Federal courts was exclusive in all cases where it is conferred by the 3d article of the constitution. The general, if not universal principle, applicable to courts of concurrent jurisdiction, is, that the one which first obtains jurisdiction is (as to the particular case) exclusive, so long as the suit is pending therein.

If, then, the State and Federal courts have concurrent jurisdiction over controversies between citizens of different States, it seems to me that the 12th section of the act of 1789, authorizing the removal of a suit from a State court, is in antagonism to the rule referred to. If the jurisdiction is concurrent, and it is sustainable in both courts under the constitution of the United States, why has the Federal government, any more than the State, the power by legislation to oust the jurisdiction of the court which first obtains jurisdiction? The one can do it, but not the other; and so it has long been settled, and must so remain. These concurrent powers of the national and State governments, and concurrent jurisdiction of the courts of the two governments, must always continue to be a source of trouble and difference, and occasionally of serious collisions. I am in favor, whenever it can be done without conflict with long established practice and principles, to restrict and diminish the sphere of the operation of this concurrent power and jurisdiction. See *Ad Hine v. Trevor*, decided by the supreme court of the United States, at December term, 1866.

It has been held, that where the State and Federal courts, by the constitution, have concurrent jurisdiction, congress

may make it exclusive in the latter.—Curtis' Com. § 148, p. 197; 1 Kent's Com. 400-4; *Cohens v. Virginia*, 6 Wheat. 413. These views, I conceive, are substantially sustained by the authority of Story, Hamilton, Kent, and Marshall. 2 Story on Con. § 1774, 1690-4; *Cohens v. Virginia*, 6 Wheat. 413; 1 Kent's Com. 400-405; Federalist. The integrity, learning, patriotism, and legal and judicial opinions of these eminent and distinguished men, are the solid, massive, polished, and enduring pillars, upon which reposes the vast superstructure of American international and constitutional jurisprudence; and whatever beauty of expression, symmetry of proportion, unity of construction, and solidity of texture, are to be found in the splendid fabric, may be traced to the labors of the finished and comprehensive intellects of these master architects. This tribute is due from their countrymen, and I freely and most cheerfully award my share of it, in the face of the long and deep-seated prejudices which have existed and still exist in this country against them. And this I say the more readily, as it is in conformity to opinions entertained and expressed by me for the quarter of a century past.

If congress can make this jurisdiction exclusive, then it is competent for congress to enact a law, that a non-resident of a State shall not be sued in the courts of that State, and to provide by law that all controversies between a citizen of a State where a suit is brought in the State court, and a non-resident of such State, shall be brought in the circuit or district court of the United States held in such State, or in the State where the defendant resides; and if so, then congress had the constitutional power to pass the acts of 1866-67, as above construed. The lesser power is included in the greater. And I can conceive of no other rational theory upon which the constitutionality of the 12th section of the act of 1789, and the acts of 1866-67, can be maintainable.

As all citizens of the United States are, in one sense, citizens of each State, I have used the word "non-resident" in this opinion in the sense of "a citizen of another State" of the United States. But, if the authority of congress, under the constitution, to pass these acts, was *doubtful*, it

would be our duty to sustain their constitutionality.—*Vide* 1 U. S. Digest, p. 553, § 1, and cases therein cited.

It is said that the plaintiffs have a right to bring a joint suit at law, and to try the right to have a joint judgment against the defendants, and that congress has no power under the constitution to deprive them of these rights. These are rights which pertain to the remedy; and while it is conceded that, in a case like this, the plaintiff has a right to bring a joint action, yet the right to a joint judgment depends upon the verdict; for the jury may find a verdict against some of the defendants and in favor of the others; and that is the question to be tried; and to say that he has a right to a joint judgment, as an argument against a removal of the cause, is a *petitio principii.*

As to the right to bring a joint action in the State court, in such a case as this, there can be no question; but, at the same time, the applicants in this case have a right, secured by the constitution, to have the controversy adjudicated in the Federal courts. And the matter comes to this, must the *constitutional* right of the applicants yield to the *common-law* right of the plaintiffs in the suit, or *vice versa?* In this collision of rights, it seems to me that the rights of the applicants must override the right of the plaintiffs above noticed, as the constitution declares itself and the laws which shall be made in pursuance thereof to be the supreme law of the land, and the judges of every State shall be bound thereby, anything in the constitution or laws of any State to the contrary notwithstanding; and it is under the influence of this provision of the constitution that the laws of congress conferring exclusive jurisdiction upon the courts of the United States, where by that instrument it was left concurrent, are sustained and held to be valid.

This view does not, in this case, leave the plaintiffs without remedy. They can prosecute their suit in the Federal court against the applicants, and in the State court against Judge Busteed, as they would have been permitted to do if they had commenced, as they had a right to do, a suit against them in that court, and a suit against the latter in the State court. This view reconciles and harmonizes the

rights of all parties under the law and constitution. And there is no hardship growing out of such a course, and no retrospective effect is given to the acts of 1866–67; for the cause of action arose, and the suit was brought, subsequent to the passage of those acts.

It is not at all times an easy matter to adjust and reconcile the rights of the people under our constitution, and frames of two governments, State and national; but it is our duty to approximate such a result as near as we can, and harmonize all conflicting and colliding interests of society and the rights and duties of the individuals who aggregately constitute, what is styled in our country, *the sovereign power*.

After a careful investigation and consideration of the questions involved in the decision of this cause, I am of opinion, that the applicants have shown themselves entitled to an order of removal from the circuit court, and that it is not a matter of discretion, and should be granted as a matter of right.—*James and Wife v. Thurston et al.*, 6 Rh. Isl. 428.