## Case No. 6,818.

HUBBARD et al. v. NORTHERN R. CO. et al.

[3 Blatchf. 84; [1] 25 Vt. 715; 17 Law Rep. 316.]

Circuit Court, D. Vermont. Oct., 1853.

CIRCUIT COURTS—JURISDICTION—REMOVAL OF CAUSES.

1. The circuit courts of the United States have no jurisdiction, and, of course, cannot exercise any, but such as congress, by legislative acts warranted by the constitution, has conferred upon them.

[Cited in Harrison v. Hadley, Case No. 6,137.]
[Cited in Beery v. Irick, 22 Grat. 488.]
[See Baker v. Biddle, Case No. 764.]

2. Where one of the two plaintiffs in a suit originally commenced in a state court, and removed by the defendant into this court, under the 12th section of the act of September 24, 1789 (1 Stat. 79), was a citizen of New Hampshire, and the other was a citizen of Vermont, and the defendant was a citizen of New York: *Held*, that this court had no jurisdiction of the case: that it could not be removed into this

court; and that it must be remanded to the state court.

[Cited in Fisk v. Henarie, 32 Fed. 422.]

3. To authorize the removal, all the plaintiffs must be citizens of the state in which the suit is brought, and all the defendants must be citizens of some other state or states.

[Cited in Sands v. Smith, Case No. 12,305; Florence Sewing Mach. Co. v. Grover & Baker Sewing Mach. Co., Id. 4,883.]

4. The erection of the supreme and inferior courts of the United States, under the constitution of the United States, considered.

These were actions at law, originally instituted in a state court, and were removed into this court by the defendants [the Northern Railroad Company and trustees], under the 12th section of the act of September 24, 1789 (1 Stat. 79). The plaintiffs [Henry Hubbard and Solomon Downer, administrators of S. F. Belknap] now moved to dismiss the actions, and remand them to the state court, for want of jurisdiction in this court.

Julius Converse, for plaintiffs.

Samuel S. Phelps and Lucius B. Peck, for defendants.

PRENTISS, District Judge. The judicial power of the United States is, by the constitution, vested in one supreme court, and in such inferior courts as the congress may, from time to time, ordain and establish. And here I cannot forbear saying, what is naturally suggested to the mind by this reference to the constitution, though it may have no direct or immediate bearing upon the particular matter in question, that the more closely any one studies the constitution of the United States, and the greater his experience and opportunities of observation in civil life, the more he will be brought to admire the wisdom, the sagacity, and the enlightened patriotism of the authors of that instrument. None of its provisions present higher evidence of intelligence, judgment, and inflexible devotion to principle, than those concerning the judiciary—giving it, as they do, a limited, yet adequate, jurisdiction, extending to, but not going a jot beyond, what the wants, necessities, and exigencies of the government of a nation, formed by a union of states, retaining in severalty a distinct but qualified sovereignty, require, with a tenure of office during good behavior, determinable only by misconduct—thus securing, as far as any organic law can do, consistently with subjection to just responsibility, that independence of opinion and action which is indispensably requisite to preserve rectitude, impartiality, and firmness in the administration of justice.

Under and pursuant to the constitution, congress, besides a supreme court, has established certain courts inferior to that court, called and known as the circuit and district courts. In erecting these courts, congress might have given them such jurisdiction as it thought proper, keeping within the limits prescribed in the constitution. It might

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

have vested in the circuit court, for instance, more or less of the judicial power of the United States, not by the constitution vested originally or exclusively in the supreme court. It has given it not all it might have given it under the constitution, but a limited and restricted jurisdiction. By the constitution, the judicial power of the United States extends, for example, in general terms, to "controversies between citizens of different states;" but, by the act of congress, the circuit court cannot take jurisdiction of all such controversies, but only of those where the matter in dispute exceeds the sum or value of five hundred dollars. So, also, the jurisdiction is subject to restrictions in other respects; such, for instance, as the residence of one of the parties in the district where the suit is brought. The result, therefore, is that this court has no jurisdiction, and, of course, cannot exercise any, but such as congress, by legislative acts warranted by the constitution, has conferred upon it.

The plaintiffs are joint administrators, under letters of administration granted by a court of probate in this state, the intestate having had his domicil here. One of the plaintiffs, Hubbard, is a citizen of New Hampshire; and the other, Downer, a citizen of this state. The defendant is a corporation, created, established, and performing its corporate functions in New York. The suits were regularly commenced in the state court, according to the laws of the state, service being made upon the defendant, in one case, by attaching a large amount of personal property; and, in the other, by attaching personal property and also certain debts owing the defendant by certain persons summoned in as trustees.

The language used by congress, in providing for and regulating the removal of causes, at the instance of the defendant, from a state court to the circuit court, is not the same, in reference to the character or residence of the parties, as that employed in suits originally brought in the circuit court. There is a marked difference, in the particular mentioned, in the phraseology of the two provisions—one being much more restrictive than the other. In that giving original jurisdiction, the words are, "where the suit is between a citizen of the state where the suit is brought, and a citizen of another state." In that giving jurisdiction of suits originally commenced in a state court and regulating their removal, the words are, "commenced by a citizen of the state in which the suit is brought, against a citizen of another state." Of course, jurisdiction, which is excluded, in both classes of cases, where neither party is a citizen of the state in which the suit is brought, is not coextensive, in the latter class, with that in the former; for, no suit, for instance, commenced in a state court by a citizen of another state, against a citizen of the state where the suit is brought, can

be removed to the circuit court, although it might have been originally brought there. But the difference between the two provisions, so far as concerns the single isolated question here presented, is not material, the construction, in that particular, being alike as to both.

If Downer were the sole plaintiff in these actions, he being a citizen of this state, and the defendant resident in New York, the cases, it is obvious, would be within the very terms of the act of congress; but, if Hubbard were the sole plaintiff, he not being a citizen of this state, the cases, it is equally obvious, would not be within the act. The question, therefore, simply is, whether, there being two plaintiffs, it is sufficient, to bring the cases within the provisions of the act of congress, and give jurisdiction, that one of the plaintiffs is a citizen of this state, or whether it is necessary that both should be.

Though there may be no adjudged case exactly in point, upon this particular provision of the act, there are several cases upon the provision relating to original jurisdiction, which, from just analogy, would seem to decide the present question. In the case of New Orleans v. Winter, 1 Wheat. [14 U. S.] 91, where the plaintiffs below brought their suit in the circuit court for Louisiana, one of them being a citizen of the state of Kentucky, and the other a citizen of the Mississippi territory, it was held, that a citizen of a territory cannot sue a citizen of a state in the courts of the United States, nor can those courts take jurisdiction by other parties being joined who are capable of suing. Marshall, C. J., after stating that Winter, being a citizen of the Mississippi territory, was incapable of maintaining a suit alone in the circuit court of Louisiana, asks: "Is this case mended, by being associated with others who are capable of suing in that court?" And he decides the question, by saying: "In the case of Strawbridge v. Curtis, 3 Cranch [7 U. S.] 267, it was decided, that, where a joint interest is prosecuted, the jurisdiction cannot be sustained, unless each individual be entitled to claim that jurisdiction." The sum of the matter seems to be, that in every case brought before a circuit court by original process, each of the persons prosecuting must be competent to sue, and each of the persons defending must be liable to be sued, in such court. Here, one of the plaintiffs as well as the defendant, residing out of this district, it is quite evident that the cases between these parties, though between citizens of different states, are not of a character to be within the original cognizance of this court, and, of course, could not have been instituted therein.

From the rule so laid down at an early day, and thus reconsidered and re-affirmed at an after period, in respect to the jurisdiction of suits originally brought in the circuit court, it must follow, unless a distinction be made where there is no perceptible ground

of difference, that the jurisdiction cannot be sustained in the case of a suit originally commenced in and removed from a state court, unless the citizenship of each individual be such as to make the suit removable, and thus subject him to such jurisdiction. According to the rule, the local residence of all the parties on each side must be such as to bring the case within the provision of the act of congress regulating the removal; that is, all the parties plaintiffs must be citizens of the state in which the suit is brought, and all the parties defendants citizens of some other state or states.

Such appearing to be the construction, not only authorized but called for, by determinations of the highest judicial authority, it forms the law for the decision of the question here pending; and, according to it, one of the plaintiffs not being a citizen of this state, this court has not jurisdiction. The consequence is, that the motion to dismiss must be allowed, and the causes be remanded to the state court.

NOTE [from 17 Law Rep. 316]. It was clearly seen, by the great men who conceived and framed the constitution of the United States, that without a national judiciary, existing under and deriving its authority solely from the national government. with powers commensurate with, but not exceeding, the great purposes and objects of the Union, the government would have neither efficiency nor stability. and would soon perish for want of power in itself to enforce obedience to its laws, and hold the people, and through them the states, in just subordination to the paramount national authority. It was considered indispensable to have a judiciary, to take cognizance not only of all suits and prosecutions in behalf of the general government. or arising under its laws, but of controversies between citizens of different states, and especially of all controversies between states arising out of adverse or interfering state claims. thereby securing a peaceful determination of what might otherwise grow into forcible collisions and conflicts; and also for protection to every citizen of the Union against all unconstitutional invasions of his rights, either by acts of legislation prohibited to the states, or by unauthorized legislative action of the general government.

It was also held, and acted upon as an undeniable proposition, that. to maintain the constitution itself in its true spirit and meaning, and secure a just and faithful performance of judicial duty, in all questions arising under the constitution and laws, or affecting individual private rights, it was not only expedient and judicious. but essentially necessary, to make the judiciary independent,—independent as provided in the constitution,—by elevating the judges, as far as practicable, above and beyond the reach of governmental, popular. or sinister influences. It was seen that if you make the continuance in office of a judge dependent on reappointment or re-election. at short stated periods, you so much lessen or impair his independence; and that just in proportion as you do that. you diminish your security for his good behavior. At the same time it was seen, what more than 60 years' experience has proved to be true. that. as the judges neither would have nor could exercise any power otherwise than through the decision of controversies brought judicially before them, between party and party, there could be no danger whatever, either to the state or the people. from such independence of position, and consequent independence of opinion and action.

The principle of judicial independence, and the reasons on which it is founded, apply, in their utmost force, to all free representative governments. If in favorable times, and under peculiarly favorable circumstances, a dependent judiciary may be both able and upright, as in Vermont, for instance, for many years, much to her credit, as well as advantage, it raises no doubt as to the superior wisdom and safety of a more permanent tenure of office. The instance mentioned is, at the most, but an exception, and is owing chiefly to the steady, uniform political character of the state, to the habit prevailing in it of never allowing the judicial appointments to be controlled by party politics, and to the commercial pursuits and interests of the people being of such limited extent as to make the suits in its courts in general of comparatively small magnitude. But there, as everywhere else, it would be both wiser and safer to have the independence of the judiciary such as to place it, not only beyond the reach. so long as its ministers conduct themselves with integrity, of either of the other powers of government, but also beyond the possible reach of popular and personal influence.

In general, notwithstanding all the formal guaranties of a written constitution, if the judge be not thus independent, what assurance or confidence can the citizen have of impartial justice, or of certain and effectual protection from unjust and unconstitutional violation of his rights? If the liberty of speech, or of the press, be assailed; if the writ of habeas corpus be suspended in time of peace; if the trial by jury be invaded; if the obligation of contracts be impaired, or vested rights infringed; if the citizen be deprived of his liberty, or of his property, or if his life be unconstitutionally put in jeopardy,—where is the remedy, or who is to stay the hand of oppression? The only remedy is in the courts of justice: and without an independent judiciary—independent in the proper sense—it would be hopeless to think of maintaining the provisions of the constitution for the security of these and other private rights, in their full vigor and efficacy, according to their true legitimate meaning. or of their having any settled, fixed, and uniform operation. Indeed, with a dependent, or. in other words, a time-serving and temporizing, judiciary, the constitution would either cease to be the supreme paramount law. or, what would be same in effect, would be made to mean. in all parts most essential to the security of the citizen, just what the legislative power. or popular opinion for the time being, might be disposed to have it.