CHARLES PUGSLEY and others *vs.* FREEDMAN'S SAVINGS AND TRUST COMPANY and others.

## October Term, 1874.

PRACTICE—ENTERING APPEARANCE.—The filing of a pleading or agreement by a defendant, duly signed by his solicitor, and making an application thereon, is the entering of an appearance, within the act of congress of 1789, 20, 12.

REMOVAL OF CAUSE TO UNITED STATES COURT.—The right of the defendants to remove a cause from the state to the United States court, under 1789, 20, 12, is gone after one of the material defendants has taken the opinion of the state court upon a question which goes to the merits of the litigation.

*John Lawrence*, for petitioners.

*J. L. Rice* and *T. L. Dodd*, for complainants.

THE CHANCELLOR:—On the 22d of August, 1874, a bill was filed in this court by B. J. Hadley against the Freedman's Savings and Trust Company, J. J. Carey, cashier of the branch of said corporation at Nashville, and Abram Smith and Henry Harding, agents of said corporation for the collection of rents. The bill was filed by the complainant, as a depositor in said Freedman's Savings and Trust Company's institution at Nashville, alleging that the company had suspended payment, in violation of its contract with complainant ; that the other defendants were the agents of the company in the collection of rents of certain real property owned by it at Nashville, and asking that these rents be attached in their hands, and they be enjoined from paying the same over to the principal institution in Washington City.   Upon this bill a fiat was granted, on the 22d of August, 1874, and attachment and injunction were issued and levied the same day. The fiat is dated the 23d of August, but the other papers show that this is probably a clerical error of the judge in writing his fiat.

On the 6th of October, 1874, the defendants to this bill appeared by their solicitors, Lawrence & Peabody, and made a motion in the cause, on the complainant's counsel, for the production of the bill.   And on the 12th of October, 1874, the defendants filed their answer, admitting, in substance, the allegations of the bill, but pleading that the Savings Company was incorporated by act of congress of the 3d of March, 1865 ; that it had become insolvent, and that, on the —— day of July, 1874, and prior to the commencement of this suit, the entire assets of the company had been, under the act of congress of the 20th of June, 1874, § 7, providing, in certain contingencies, for the winding up of the institution, and a *pro rata* distribution of its effects, assigned to three commissioners, viz. : J. A. J. Cresswell, Robert Purvis, and R. H. T. Leopold, who had been appointed, qualified, and accepted the trust, and assumed the management of the affairs of the company. The answer also embodied a demurrer to the allegations of

the bill upon which the prayer for attachment is based. The answer also stated that the company owned unencumbered real estate in this city which cost $27,000, and notes, secured by mortgages on realty in this county, amounting to $7,000.

On the 6th of November, 1874, Charles Pugsley and others, claiming also to be depositors in said branch institution at Nashville, had prepared a bill ready for filing against the said Freedman's Savings and Trust Company, as a corporation chartered by congress, and having its chief place of business at Washington, in the District of Columbia, but having a branch office at Nashville, of which J. J. Carey is cashier. The bill alleges that the complainants are depositors, in the branch at Nashville, of the several sums mentioned, making their deposits on the faith of assurances by the agents of the company that investments were in United States bonds, etc.; that complainants had demanded their deposits, but payment thereof was refused; that all of defendant's actions have been to deceive and fraudulently appropriate the earnings of its depositors; that the corporation owns no property within the jurisdiction of the court, except its banking house and lot on Cedar street, in Nashville; that it is the intention of the defendants to fraudulently dispose of its property, and to leave complainants without anything to look to for payment of their deposits. The prayer is that an attachment issue to attach the banking house; that the defendant and its agents be enjoined from paying over rents or moneys in their hands; that a receiver be appointed to take charge of said property, and for general relief.

In this state of affairs the following agreement was entered into in writing, and signed by the solicitors of the parties:

*B. J. Hadley* v. *F. S. & T. Co.*

With a view to an early and economical settlement of the vital question in this case, the following facts are agreed on:

1st. The plaintiff is a depositor, as alleged in his petition, and payment of his deposit has not been made, although

demanded. He made his deposit with the agreement that it should be paid him on demand.

2d. The bank has become hopelessly insolvent, and creditors can only hope for a per cent. of their claims.

3d. Prior to the commencement of this suit, all the assets of the bank were assigned to commissioners appointed under an act of congress, and the trust has been accepted.

4th. It is the purpose of the commissioners to sell all the property of the bank in the state of Tennessee, and to remove all the proceeds of the sale, together with all the money due the bank, to Washington City, and then to make distribution thereof *pro rata* among all depositors.

5th. The bank has now in the hands of said assignees a large amount of unencumbered property in this state.

6th. The charter or act incorporating the Freedman's Savings and Trust Company is also submitted as a part of this agreement.

Now, can the plaintiff, by the aid of this court, reach this property and appropriate it to the payment of his deposit?

This agreement was signed by Lawrence & Peabody, as solicitors for the bank, and by Guild & Dodd for the complainants. Then followed the following agreement, signed by the same parties for the complainant, and by John Lawrence, " Sol'r for Bank."

" It is agreed upon the part of complainant and defendant, in the matter of the application of *Pugsley et al.* v. *Freedman's Bank*, that said bill shall be considered by the court as if duly sworn and subscribed to by the proper parties, and the plea, answer, and demurrer of defendant in the Hadley case shall be regarded as applicable thereto. The fact of the Pugsley bill being multifarious is not objected to by defendant. And complainant and defendant agree that said bills shall be considered by the court as upon application for attachment and injunction, and to be tried upon the agreed state of facts."

The two cases were, therefore, submitted to me upon the

pleadings as hereinbefore set 'forth, and the above agreements, and were argued, both orally and in written briefs, the defendants being ably represented by Judge Lawrence, of the firm' of Lawrence & Peabody. I took the case under consideration, and prepared and delivered a written opinion. I held, in brief, that the act of congress which incorporated the Freedman's Savings and Trust Company created a corporation in the District of Columbia, as the legislature of that territory, and not a corporation for the United States, under any power conferred upon that body as the representative of the Union. That such a corporation, being for a purpose eminently laudable, might well do business, under the comity of nations, in this state. That, in this view, nothing stood in the way of any court, having jurisdiction, taking cognizance of the contracts between the parties and enforcing them. That the depositors had, therefore, a right to come into this court to have their debts ascertained and adjudged, and to subject the property of the corporation in this state to the satisfaction of their debts. That the defendant corporation, being a non-resident within the meaning of our attachment laws, could be proceeded against by attachment of its property. That the insolvency of the corporation would not affect these rights of the depositors, nor the jurisdiction of the court, but would, under our decisions, prevent any one depositor from acquiring an exclusive right to be first satisfied out of the property of the corporation. That such property must be divided *pro rata* among the claimants standing in the same right, and not by law entitled to priority. That any creditor might come into this court to subject the property to the satisfaction of the debts, and if his action secured the fund, and was eventually held to be for the benefit of all parties interested, such impounding creditor would ordinarily be entitled to his reasonable costs and expenses. I was also of opinion, and so held, that the assigment of the property of the Savings Company, under the act of congress of the 20th of June, 1874, to commissioners, whether it be con-

sidered as statutory or operative, by deed *inter partes*, would not operate upon the property in this state as against creditors until there was a formal assignment in writing, proved and registered in this state in conformity with our registration laws. And that, consequently, the complainants were not precluded from proceeding with their bills by reason of the assignment pleaded. But, inasmuch as the bills filed were, on their face, for the exclusive benefit of the parties joining in them, and inasmuch as it was clear they could not acquire priority of satisfaction by the course adopted, I suggested the propriety of filing an amended and supplemental bill, as well for themselves as for all other creditors and claimants who might choose to come in and make themselves parties, and bringing the commissioners before the court as defendants, and, while claiming satisfaction out of the assets in this state, ask for all proper accounts, that the property be sold under the orders of the court, that a receiver be appointed, and for general relief. I further held that, upon such a bill, as well as upon the bill already filed, the complainants would be entitled to fiats of attachment and injunction, upon executing bonds as required by law. The question whether the depositors in this state might not elect to take the property here, to the exclusion of foreign depositors, was left for further consideration.

No formal decree seems to have been drawn up embodying the conclusions of the court upon the question submitted by the agreed case. The parties contented themselves with an order reciting that the cause was heard on the 10th of November, 1874, upon the demurrer of defendant filed, and that the demurrer was, upon argument, overruled. The order further adds that, upon motion, complainants are permitted by the court to file an amended and supplemental bill, upon the part of themselves and all other Tennessee creditors of defendant, who can make themselves parties, by petition, to said original and amended bills.

Under this order, on the 11th of November, 1874, an amended and supplemental bill was filed by Charles Pugs-

ley, and a number of other depositors, as well for all of the creditors who may join in the original and amended bill as of all other creditors of said defendant who reside in this state. The commissioners mentioned in the answer to the original bill are made defendants with the Savings Company, and the prayer is in accordance with the suggestions of the court. The bill avers the possession by defendant, the Savings Company, of the property mentioned in its answer to the Hadley bill, and calls for a discovery of the condition and assets of the company, with a view to enable the complainants to elect whether they would take the property in Tennessee, to the exclusion of other creditors. B. J. Hadley, the complainant in the first bill, is not named in this bill. And, although attachment and injunction are prayed, no fiat for the issuance of either has been obtained under the original or amended bill of Pugsley, nor, of course, have either been sued out or executed.

Under these circumstances, on the 19th of November, 1874, the Freedman's Savings and Trust Company, as a citizen of the District of Columbia, and J. A. J. Cresswell, a citizen of the state of Maryland, Robert Purvis, a citizen of the state of Pennsylvania, and R. H. T. Leopold, a citizen of the District of Columbia, filed and presented their petition, asking for the removal of the case of Charles Pugsley and others, against them, to the circuit court of the United States for the middle district of Tennessee, sitting at Nashville, the said Charles Pugsley and other complainants (who were named) being all citizens of the state of Tennessee. The petition is filed under the judiciary act of congress of the 24th of September, 1789, ch. 20, § 12, and is in substantial conformity with the provisions of that act.

The complainants being all citizens of the state of Tennessee, and the defendants citizens of other states, the latter are entitled to a removal of the cause, under the 12th section of the act of 1789, so far as the right to remove depends upon the citizenship of the parties. *Wilson* v.

*Blodget,* 4 McLean, 363; *Wood* v. *Davis,* 18 How. 467. But it is objected that the petitioners have failed to make their application in proper time, the act itself expressly providing that it must be made by the defendant "at the time of entering his appearance in such state court." This objection, it is conceded, does not literally apply to the commissioners under the act of congress, for they were not parties to the original bill, nor to the agreements between the original parties. It is said, however, that they did "make an appearance" in said agreement. This position seems to be assumed upon the ground that the interests of the commissioners were involved in the submission. But I am unable to see how persons can be said to "make an appearance" who are no parties to the suit or to the agreements entered into, and who do not appear, either in person or by counsel, even if they are interested in the event of the litigation. The point is, perhaps, not very important, for nothing is better settled than that all of the material defendants must join in the application for removal, under 1789, 20, 12. *Smith* v. *Rines,* 2 Sumn. 338; *Beardsley* v. *Torrey,* 4 Wash. C. C. 286; *Ward* v. *Arredondo,* 1 Paine, 410; *Ex parte Turner,* 3 Wall. jr. 258; *Case* v. *Douglas,* 1 Dill. 299; *Hubbard* v. *Railroad Company,* 3 Blatchf. 84. The Savings Company is, of course, a material party, and, if it either will not or can not join in the application, no removal can be had.

The learned counsel for the petitioners insists that they did not appear until the 19th of November, the day on which the petition for removal is filed. However strong may be his own conviction on this subject, it is obvious that he is stating a conclusion or inference from admitted facts, not a fact *per se.* The added agreement already copied, which is signed by him with the designation of " Sol'r for Bank," distinctly stipulates that, " in the matter of the application of *Pugsley and others* v. *Freedman's Bank,*" the " said bill shall be considered by the court as if duly sworn and subscribed to by the proper parties, and the plea,

answer, and demurrer of defendant in the Hadley case shall be regarded as applicable thereto." "And complainant and defendant agree that said bills shall be considered by the court as upon application for attachment and injunction, *and to be tried upon the agreed state of facts.*" Nothing can be clearer than that the Savings Company, waiving informalities, agreed to consider its answer as filed to the Pugsley bill, and to have a decision from the court on the principal matters in controversy upon such pleading and agreement.

Is this, then, " an entering of his appearance," within the meaning of the act of congress? At common law a judgment or decree could not be taken without formal appearance by the defendant, or entry of appearance for him by the plaintiff, in cases where such entry was allowable. 1 Tidd Pr. 238; 1 Dan. Ch. Pr. 557. What constituted such formal entry was, at one time, often a matter of grave consideration. In chancery it consisted in filing, in the proper clerk's office, a written request to enter appearance and give notice to the opposite party. Id., and 1 Hoffm. Ch. Pr. 170. But, at present, the formal entry has, throughout the United States, ceased to be important, because service on a defendant to appear is made equivalent to actual appearance. *Sweeny* v. *Coffin*, 1 Dill. 75. Doubtless with us an entry of the solicitor's name, either by himself, or the clerk at his instance, on the rule or trial docket would be sufficient. And an entry upon the records of the court by filing a pleading duly signed constituting a part of the record, or formally, in person or by attorney, making an application or motion, would be an appearance. Hindes Pr. 144; 1 Har. Pr. 219, cited by Chancellor Kent, in *Livingston* v. *Gibbons*, 4 Johns. Ch. 99. Accordingly it was held by that eminent judge, in that case, that where the defendant puts in an answer, which is read in court, by consent of the opposite counsel, and ordered to be filed, and a decretal order is made thereon, it is an appearance on the records. And in *New Jersey* v. *New York*, 6 Pet. 323, a demurrer to a bill, signed by the attor-

ney general of a state, was held to be a sufficient appearance by such state in a suit brought against it. And the filing of a petition for removal is an appearance, within the act of congress. *Sweeny* v. *Coffin*, 1 Dill. 75. *A fortiori*, will an answer or agreement, or both, signed by counsel, filed and used as a defence, upon a motion, application, or hearing, be held an appearance? " The act of congress," says Chancellor Kent, in *Livingston* v. *Gibbons*, " requires the petition for removal to be coeval, in point of time, with the party's appearance in court, and the defendant is not to be allowed to appear and submit to the consideration of the state court the merits of the case, either in whole or in part, and, after having procured a decision, to apply for a removal of his cause. He is not entitled, under that act, to an opinion of both the state and federal courts, upon any part of the case, unless in the regular course of appeal, or by writ of error."

The question submitted to me by the Freedman's Savings and Trust Company, upon its plea, answer, and demurrer to the Hadley bill, taken as the plea, answer, and demurrer to the bill of Charles Pugsley and others, and upon an agreed state of facts, drawn up by its counsel, was : " Whether the plaintiffs, by the aid of this court, can reach " the property in dispute, " and appropriate it to the payment " of their deposits? The defendant had a right to have this question, which went to the merits of the controversy, heard and determined, either by the state court or the federal court. It elected to take the opinion of this court, and thereby lost the election given by the act of congress. It is out of my power, now, as has been repeatedly decided, to place the defendant in the situation in which he was before making the election. *Gibson* v. *Johnson*, Pet. C. Ct. 44 ; *Ward* v. *Arredondo*, 1 Paine, 410. In the first of these cases the state court undertook to order the petition to be filed *nunc pro tunc* as of the date of appearance, but without avail. I am sorry to be driven to this conclusion, for I would gladly avoid the responsibility of taking charge

of a case where so many persons are interested, and where so little will probably be eventually realized. The mode adopted by congress for winding up this institution is, perhaps, the cheapest and best for the parties interested. But I have no option except to do my duty in the premises according to law and the forms of my court.