FISK *v.* HENARIE and others, Ex'rs, etc.

*(Circuit Court, D. Oregon.   October 26, 1887.)*

1. REMOVAL OF CAUSES—LOCAL PREJUDICE—AFFIDAVIT.

The provision in section 2 of the act of 1887, (24 St. 553,) authorizing the court to examine into the truth of an affidavit for removal of a case from a state court, on account of prejudice or local influence, applies only to cases removed before the passage of said act on the application of the plaintiff; and otherwise than this, such affidavit being not a matter of jurisdiction, but only a condition imposed of the party seeking the removal, it cannot be questioned or contradicted; nor is it necessary that the affiant should state the grounds of his belief.

v.32F.no.7—27

**2. SAME—LOCAL PREJUDICE—WHO ENTITLED TO REMOVAL.**

Subsection 3 of section 639 of the Revised Statutes, as amended by section 2 of the act of 1887, gives the right to remove a suit "in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state," to "any" defendant, being such citizen of another state, on account of prejudice or local influence, without reference to the citizenship of other persons who may be parties thereto.

**3. SAME—JURISDICTION.**

The judicial power of the United States extends to "controversies" between citizens of different states, which include a "case" in which such controversy exists without reference to the citizenship of the other parties therein; and congress may confer jurisdiction of such controversy, including the case in which it is involved, on the circuit courts, by removal or otherwise.

**4. SAME—TIME OF APPLICATION.**

An application for the removal of a case from a state court, if made while the case is pending for trial, is made "before the trial thereof," within the intent of the removal acts, although there may have been any number of mistrials, or trials in which the verdict was set aside or the jury disagreed.

(*Syllabus by the Court.*)

Action to Recover Damages.    Motion to remand to state court.

*George H. Williams*, for plaintiff.

*James K. Kelly* and *John M. Gearin*, for defendants.

DEADY, J.    This action was removed to this court from the state circuit court for the county of Multnomah, on the petition of the defendants, Daniel V. B. Henarie and Eleanor Martin and James M. Donahue, Annie Donahue, and Mary Ellen von Schroeder, the executors of the last will and testament of Peter Donahue, deceased, filed July 30, 1887, together with their bond, in form and effect as required by law, and the affidavit of said Henarie and Eleanor Martin to the effect that they and each of them have reason to and do believe "that, from prejudice and local influence," the affiants and said executors "will not be able to obtain justice in said state court, or in any other state court to which said defendants, under the laws of the state of Oregon, have the right to remove the same, on account of such prejudice and local influence." The plaintiff now moves to remand the case to the state court for substantially the reasons following: (1) The application for removal was not made in time, or before the trial in the state court. (2) The affidavit does not state the facts showing the existence of "local prejudice or influence." (3) The removal papers were not served on the plaintiff. (4) The petition and accompanying papers do not show a case for removal. The motion concludes with a denial of the existence of the alleged "prejudice and local influence," and asks the court to examine into the truth of the affidavit asserting the same and the grounds thereof; and to that end the plaintiff offers to read the affidavits of sundry persons who state that they do not believe in the existence of such prejudice or local influence.

It appears from the record that this action was commenced in Wasco county on November 30, 1883, against Daniel V. B. Henarie, Peter Donahue, Eleanor Martin, Thomas S. Martin, Edward Martin, and John D. Wilcox, to recover a commission of 10 per centum, amounting to $60,000, on the alleged sale of a tract of land belonging to said parties,

known as the Dalles military road grant, containing about 600,000 acres, and situate in the counties of Wasco, Grant, and Baker, in Oregon. The first three of the defendants were then residents and citizens of California, and the latter three of Oregon. Service of the summons was had on the Oregon defendants, and they appeared and answered. Thereafter, on February 2, 1884, publication of the summons was ordered in the case of the California defendants, who, on August 21, 1884, appeared and answered. The answers of the defendants controvert the allegations on which the plaintiff bases his demand, and contests his right to recover anything from them or either of them on any sale of said lands.

On September 1, 1884, the plaintiff replied to the answers, and on the tenth of the same month, on the application of the defendants, the place of trial was changed to Multnomah county, it appearing that none of the parties lived in Wasco county, and that the Oregon defendants, as well as the plaintiff, lived in Multnomah county. Afterwards the case was tried with a jury in the circuit court for said county, who, on April 15, 1885, found a verdict, under the direction of the court, for the defendants, on which there was a judgment for costs in their favor; which judgment was, on January 11, 1886, reversed by the supreme court, and a new trial ordered, that resulted on May 21, 1886, in a verdict for the plaintiff for the sum of $60,000.

On May 18th, the death of the defendant Peter Donahue was suggested, and his executors, James M. Donahue, Annie Donahue, and Mary Ellen Schroeder, substituted as defendants. Afterwards, the case was heard on the motion of plaintiff for judgment, and the motions of the defendants for a new trial, and a judgment notwithstanding the verdict, and on June the 30th the first motion was denied and the latter allowed, on the ground that the complaint did not state facts sufficient to constitute a cause of action; and thereupon judgment was entered for costs in favor of the defendants; which judgment was, on October the 20th, reversed by the supreme court, and the case remanded for further proceedings according to law. On December the 18th the circuit court allowed the motion for a new trial, and set aside the verdict, from which order the plaintiff appealed to the supreme court, which appeal was, on April 18, 1887, dismissed, and thereafter the case was again submitted to a jury, who, being unable to agree, were, on July the 15th, discharged without finding a verdict.

The act of March 2, 1867, (14 St. 558,) gave right of removal of a suit from a state court to a national one, "in which there is a *controversy* between a citizen of the state in which the suit is brought and a citizen of another state," on the affidavit of the latter, "whether he be plaintiff or defendant," that he has reason to believe and does believe that, from prejudice or local influence, he will not be able to obtain justice in such state court; provided, he files a petition for such removal "at any time before the final hearing or trial of the suit." Section 639 of the Revised Statutes contains a compilation of the statutes on the subject of removals passed prior thereto. Subsection 3 thereof took the place of the act of 1867. In its compilation the word "controversy" was dropped, and the

right of removal limited to a "suit between a citizen of the state in which it is brought and a citizen of another state;" and the petition and affidavit were required to be filed at any time "before the trial or final hearing of the suit." By the act of March 3, 1875, (18 St. 470,) section 639 of the Revised Statutes was repealed, except subsection 3 thereof. The last two clauses of the section, regulating the manner of removal, were also held to remain in force for the purpose of removals under said subsection, the same not being provided for in the act of 1875. *Railway* v. *Bates*, 119 U. S. 467, 7 Sup. Ct. Rep. 285. The act of March 3, 1887, (24 St. 552,) purports to be amendatory of that of 1875, "and for other purposes."

Considering the importance of the subject, and the high character of the body that enacted it, to say the least, it is a very unskillful and slovenly piece of legislation. It contains (sections 5 and 6) a general repealing clause "of all laws and parts of laws in conflict" with itself, and several special ones, and sundry saving clauses in which no mention is made of section 639 of the Revised Statutes. But section 2 of the act contains subsection 3 of said section in a modified form, and so far repeals the latter by implication. It reads as follows:

"And where a suit is now pending, or may be hereafter brought, in any state court, in which there is a *controversy* between a citizen of the state in which the suit is brought and a citizen of another state, *any* defendant, being such citizen of another state, may remove such suit into the circuit court of the United States for the proper district, at any time *before the trial thereof*, when it shall be made to appear to said circuit court that, from prejudice or local influence, he will not be able to obtain justice in such state court, or in any other state court to which the said defendant may, under the laws of the state, have the right, on account of such prejudice or local influence, to remove said cause: provided, that, if it further appear that said suit can be fully and justly determined as to the other defendants in the state court without being affected by such prejudice or local influence, and that no party to the suit will be prejudiced by a separation of the parties, said circuit court may direct the suit to be remanded, so far as relates to such other defendants, to the state court, to be proceeded with therein."

Then follows an independent temporary provision, intended to apply to suits pending in the circuit courts, which had then been removed from the state courts under subsection 3 of section 639 of the Revised Statutes, "on the affidavit of any party *plaintiff*" therein, on account of prejudice or local influence, which authorizes the circuit court, at any time before trial, on the application of the other party, to "examine into the truth of said affidavit and the grounds thereof," and to remand the case unless the statement appears to be true. Thus it appears that, by the act of 1887, the pendency of a suit in which there is a "controversy" between citizens of different states is again made the ground of removal, as in the act of 1876, in cases of prejudice or local influence, while the right to have such removal is confined to the "defendant." The clause concerning an examination into the truth of the affidavit for removal when made by the "plaintiff," has no application to a removal had under the act, and which did not take place before the passage of the same, under sub-

section 3 of section 639 of the Revised Statutes. In the case of a removal under this subsection, the party seeking it is required to make an affidavit to the effect that he believes he cannot obtain justice in the state court, on account of prejudice or local influence. The act of 1887, however, only provides that such fact "shall be made to appear" to the circuit court; but as to when or how it shall be made to appear, or how such removal may be effected, it is silent. This class of cases is expressly excepted from the operation of section 3 of the act prescribing the mode of removal thereunder, generally. It follows that so much of section 639 of the Revised Statutes as relates to the method of removal on account of prejudice or local influence, and the proof thereof, is not in conflict with the act of 1887, and is therefore still in force and applicable to such removal. And thus, in the mode provided by statute, it appears to the court, from the affidavits of the defendants Henarie and Eleanor Martin, that, from prejudice and local influence, the defendants will not be able to obtain justice in the state courts. It is sufficient that they have made oath that they so believe, without setting forth the facts or circumstances on which such belief is founded. *Meadow V. M. Co.* v. *Dodds*, 7 Nev. 147. See, also, *Bowen* v. *Chase*, 7 Blatchf. 255.

It was competent for congress to have authorized the removal of the case on the diverse citizenship of the parties alone. But it has seen proper to require in addition the oath of the applicant for removal that he *believes* he cannot obtain justice in the state tribunal, on account of prejudice or local influence. Any fact the existence of which is made a condition precedent to the removal of a case, and which is also necessary to the jurisdiction of the circuit court, may be controverted by the party against whom such removal is had. But the proper mode of doing this is not by affidavits, but by a dilatory plea in the nature of a plea to the jurisdiction, on which the question may be submitted to a jury for determination. *McDonald* v. *Flour Mills Co.*, 31 Fed. Rep. 578; *Coal* v. *Blatchford*, 11 Wall. 177. But the affidavit of the defendants concerning their belief as to their ability to obtain justice in the state tribunals is not a jurisdictional matter, but only a condition precedent to their right of removal, the same as the oath to a demurrer, required by the equity rule 34 as a condition precedent to filing the same, "that it is not interposed for delay." And in my judgment, when such affidavit is made and filed in the manner and terms prescribed by the statute, the condition is performed, and the truth of the matter is not open to question. No case has been found in which it has been allowed or even attempted; and the action of congress in providing specially in the act of 1887 for examining into the truth of the affidavit in pending cases, where the removal was had on the affidavit of the "plaintiff," is a legislative construction of the act to the same effect.

In a suit between a citizen of the state in which it is brought and a citizen of another state, subsection 3 of section 639 of the Revised Statutes gave the latter, whether he was plaintiff or defendant, the right of removal. The courts, following the narrow construction given to the same language in sections 11 and 12 of the judiciary act of 1789, (*Beards-*

ley v. Torrey, 4 Wash. C. C. 286; Smith v. Rines, 2 Sum. 338; Hubbard v. Railroad Co., 3 Blatchf. 84; Wood v. Davis, 18 How. 467; Coal v. Blatchford, 11 Wall. 172,) held that, although the designation of the party plaintiff or defendant is in the singular number, it was intended to embrace all the persons who were on one side of the controversy, so that, if either of two or more parties plaintiff were citizens of the same state with either of two or more parties defendant, the case could not be removed. As the law then stood before the passage of the act of 1887, this action could not have been removed to this court by either of the defendants; for some of them are citizens of Oregon,—the same state as the plaintiff. But, by the act of 1887, the foundation of the right of removal is the mere pendency of a suit in a state court between a citizen of the state in which it is brought and a citizen of another state. It is enough if there is a suit pending in such court, "in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state." And, while the right to remove such suit is in effect thereby denied to the plaintiff, it is not given to the defendant collectively, but to "any" one of them who "is a citizen of another state." These material changes in the language of the statute can only be considered, under the circumstances, as showing an intention on the part of congress to restore the act of 1867 in this respect, as it was before the compilation of the Revised Statutes. It is no longer necessary that the "suit" should be between persons of diverse citizenship. It is sufficient if there is a "controversy" involved in the suit between two such persons,—the one being a citizen of the state in which it is brought,—whatever may be the citizenship of the other plaintiffs or defendants. Nor can the right of removal thus given to "any" defendant having the prescribed citizenship, with any respect for the ordinary significance of language, be construed to include "all" the defendants, and so be denied to "any," unless "all" have such citizenship.

In support of the contrary view of the matter, it is urged that the act of 1887 is a piece of what may be called "confederate" legislation, in which there is a manifest purpose to restrain and limit the authority of the national courts, and therefore it is not likely that it was intended to enlarge their jurisdiction in this class of cases. That such appears to be the general character of the act may be admitted. But it appears to be a piece of patchwork, in which probably a number of hands were engaged, with doubtless somewhat diverse purposes. But be this as it may, no court would be warranted, on the strength of such a suggestion or circumstance, in construing the phrase "any" defendant to mean "all" the defendants, be they more or less.

Admitting this to be the proper construction of the statute, counsel for the plaintiff insists that it is unconstitutional. The question whether congress has the power to provide for the removal of a case from a state to a national court, in which some of the necessary parties defendant are citizens of the same state with the parties plaintiff, or some of them, has not been directly decided by the supreme court. It was argued before that tribunal with marked ability and research in the case of The

*Sewing-Machine Cases*, 18 Wall. 553. But, as the court held that congress had not then undertaken to confer such power on the circuit courts, it was not decided. Mr. Dillon (Rem. Causes, § 27) is clear that the judicial power of the United States includes such cases, and therefore congress may confer jurisdiction over them on the circuit courts, by the process of removal or otherwise. In *Lockhart* v *Horn*, 1 Woods, 628, Mr. Justice BRADLEY, in considering a case brought in the circuit court under section 11 of the judiciary act of 1789, said·

"Were this an original question, I should say that the fact of a common state citizenship existing between the complainants and a part only of the defendants, provided the other defendants were citizens of the proper state, would not oust the court of jurisdiction. *It certainly would not under the constitution. The case would still be a controversy between citizens of different states.*"

The constitution (article 3, § 2) provides:

"The judicial power shall extend to all cases in law and equity, arising under the constitution of the United States, and treaties made or which shall be made under their authority; to all cases affecting ambassadors, other public ministers, and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more states; between a state and citizens of another state; *between citizens of different states;* between citizens of the same state claiming lands under grants of different states; and between a state, or the citizens thereof, and foreign states, citizens, or subjects."

The change in the language of this section from the use of the term "cases" to "controversies" is apparently deliberate and premeditated; and, in the case of an instrument so carefully prepared and considered as the constitution of the United States, cannot be regarded as fortuitous, or without special significance. In my judgment, it was intended by the use of the terms "cases" and "controversies" to distinguish between an ordinary action or suit, which may include many parties plaintiff or defendant, and involve the examination and consideration of more than one item of dispute or controversy, and so much or such part of such proceeding as may only constitute a controversy between two or more of said parties, who are citizens of different states. There may be a controversy in a case which is less than the whole of it. Both the act of 1875 and that of 1887 (section 2) make express provision for the removal of a case—the whole case—in which there is a separate controversy between citizens of different states.

A controversy between citizens of different states is none the less such a controversy because they are not the only parties to it. A controversy, in the contemplation of the constitution, is but a dispute concerning rights or wrongs cognizable by law, and which may therefore be the subject of an action or involved therein. To confine the operation of the words, "controversies between citizens of different states," to cases wherein the controversy is *exclusively* between citizens of different states, is to interpolate a word into the grant of judicial power which materially limits and restrains its operation. As well might it be claimed that the judicial power extends "to all cases affecting ambassadors, other public min-

isters, and consuls," *and them only*. Then a suit might be brought in a state court against or affecting a foreign minister, and congress would be powerless to authorize its removal, if the plaintiff took the precaution, as he doubtless would, to make some third person a co-defendant.. What the effect of such a state of things would be on the relations of the United States with other governments may be easily imagined.

The extension of the judicial power over a controversy between citizens of different states is not to be rendered nugatory by the accidental circumstance that it forms a part of, or is involved in, a suit between citizens of the same state. On the contrary, the jurisdiction in such cases must be held to include all the incidents which inhere in or attach to the controversy "Congress has power to make all laws which shall be necessary and proper to carry into execution" the grant of judicial power, (Const. U. S. art. 1, § 8,) and thus make it equal to the great and beneficent purpose for which it was intended. And in so doing it may, in my judgment, confer jurisdiction on the circuit courts of a case involving a controversy, whether separable or not, between citizens of different states, by removal or otherwise; and this, although some of the parties plaintiff and defendant in the suit are citizens of the same state. The grant of judicial power is one of the most effective means by which the framers of the constitution undertook to "form a more perfect union" between the people of the several states, and to protect them in their interstate intercourse and business from the danger of injustice growing out of state prejudice and local influence. Hamilton, in the Federalist, (No. 80,) in discussing this subject, says:

"In order to the inviolable maintenance of that equality of privileges and immunities to which the citizens of the Union will be entitled, the national judiciary ought to preside in all cases in which one state or its citizens are opposed to another state or its citizens To secure the full effect of so fundamental a provision against all evasion or subterfuge, it is necessary that its construction should be committed to that tribunal, which, having no local attachments, will be likely to be impartial between the different states and their citizens, and which, owing its official existence to the Union, will never be likely to feel any bias inauspicious to the principles on which it is founded."

The mere fact that there are parties defendant in this case who are citizens of the same state with the plaintiff ought not to weigh against this conclusion; for, so far as they are concerned, it ought not to be a matter of any moment in which tribunal the case is tried; for, as was said by Mr. Justice MILLER, in *Trust Co.* v. *Macquillan*, 3 Dill. 381, "the object in each case is to secure an impartial tribunal, and the federal courts are not courts for non-residents more than for residents." But to compel non-residents to litigate a controversy with a resident in a court of his state because other residents of such state are, either from policy or necessity, joined with him as defendants, is to compel him to submit to the judgment of a presumably partial tribunal. And if it was doubtful how this question ought to be decided, it would be proper to rule against the plaintiff. The act of 1887 allows a party moving to remand a cause the right to take the question to the supreme court, but denies it to his adversary.

Was the application to remove the case made in time? It will assist in the examination of the decisions on this question, to group together the language of the various acts on the subject. Under the act of 1866, (14 St. 356,) the application for removal was required to be made "before the trial or final hearing." In the act of 1867 the language was changed to "final hearing or trial." Section 639 of the Revised Statutes, which contains a compilation of these two acts, went back to the language of the act of 1866,—"before the trial or final hearing of the suit." The act of 1875 required the application to be made "before or at the term at which said cause could be first tried, and before the trial thereof." This cause was removed under subsection 3 of section 639, which requires the application to be made "before the trial or final hearing of the suit."

The following are the principal cases arising under these acts on the question of the time of removal:

*Dart* v. *McKinney*, 9 Blatchf. 359, was a case of removal under the act of 1866. A judgment was given in the state court on the report of a referee against the defendants, which was reversed, and a new trial granted; whereupon one of the defendants removed the cause; and, on a motion to remand, it was held that the act gave the right of removal "at any time before *the* trial or final hearing of the cause," and not "at any time before *a* trial or final hearing of the cause."

*Insurance Co.* v. *Dunn*, 19 Wall. 214, was removed under the act of 1867. The case was first tried in a court of the state of Ohio, where there was a verdict against the company. The law of the state gave the latter a right to a new trial on giving bond to abide by and perform the judgment of the court, which it did, and then removed the case to the circuit court. In the progress of the same, it was taken to the supreme court, on the question of whether the removal was taken in time, where it was decided in the affirmative. It was held that the adjective "final" applied to "trial" as well as "hearing," it being understood before the former; and some weight was given to this circumstance. The conclusion of the court was this: "It was intended to permit the removal at any time before a hearing *or trial* final in the cause as it stood when the application for the transfer was made." See, also, *Stevenson* v. *Williams*, 19 Wall. 575.

In *Vannever* v. *Bryant*, 21 Wall. 41, there was an application for removal under the act of 1867. The case was this: A trial and verdict was had in the state court. The defendants moved for a new trial, and, pending this motion, the non-resident defendants applied for a removal, which was refused, and on this ruling the case went to the supreme court. The ruling was affirmed on the authority of *The Sewing-Machine Cases*, 18 Wall. 553. In delivering the opinion of the court, the chief justice also said that the application was also properly refused, because the case was not then pending for trial, and added: "After one trial the right to a second must be perfected before a demand for the transfer can be properly made. Every trial of a cause is final until, in some form, it has been vacated."

*Jifkins* v. *Sweetzer*, 102 U. S. 177, was removed under the act of 1866,

and afterwards remanded to the state court. From the order remanding the case an appeal was taken to the supreme court, where the same was affirmed. This was a suit for an account of rents and profits, in which there was a decree in the common pleas dismissing the bill. On an appeal to the supreme court of the state, this decree was reversed, the bill reinstated, and the common pleas instructed to refer the case to a master to take an account, for the purpose of making "a final decree in the premises according to equity." Two years after the reference, but before any report was filed, the defendant applied to have the case removed to the circuit court. The supreme court held that the hearing in the state supreme court was a final one, and that nothing remained to be done but to continue the same "until the necessary accounts could be taken and the details of a final decree settled," and therefore the application was too late. In the course of the opinion, Mr. Justice MILLER said, (the hearing of the case was taken up by the supreme court on the appeal from the common pleas:) "If, on the appeal, the decree below had been reversed and the cause sent back for a rehearing, then the final hearing, for the purposes of the statute now under consideration, would not have begun until the court below had again entered upon the determination of the cause."

*Alley* v. *Nott*, 111 U. S. 472, 4 Sup. Ct. Rep. 495, was commenced in a state court of New York, and removed on the petition of Alley, one of the defendants, under the act of 1875, to the circuit court, where a motion to remand was allowed. From this ruling an appeal was taken to the supreme court, where the decision of the circuit court was affirmed, on the ground that the application for the removal came too late. The case was this: Alley and other defendants demurred to the complaint in the state court because it did not state facts sufficient to constitute a cause of action; which demurrers were overruled, with leave to the defendants to withdraw their demurrers and answer within a time prescribed, which was done, and on the day following the petition for removal was filed. The question argued before and decided by the court is that the trial of an issue of law, such as arises on a demurrer to a complaint for the cause specified, is "a trial of the action within the meaning of the act of 1875." In the course of his opinion the chief justice remarked that the state court, before entering a final judgment on the demurrer, granted a new trial with leave to amend the pleadings; and then said, *arguendo:*

"The situation of the case at this time, for the purpose of removal, was precisely the same as it would be if the trial, instead of being on an issue of law involving the merits, had been on an issue of fact to the jury, and the court had, in its discretion, allowed a new trial after verdict. *We can hardly believe it would be claimed that a removal could be had in the last case,* and, in our opinion, it cannot in the first."

*Railroad* v. *Bates*, 119 U. S. 464, 7 Sup. Ct. Rep. 285, was an action brought in a court of common pleas in Ohio against the railway company. A general demurrer to the petition was sustained by the court, and judgment given for the defendant. Afterwards this judgment was

reversed by the district court, and the case remanded to the common pleas for further proceedings. There the defendant filed a petition for removal under subsection 3 of section 639 of the Revised Statutes, on the ground of prejudice and local influence, and offered security, such as is prescribed by said section, rather than the act of 1875. For this reason the petition was denied, and the case went up the long ladder of appeals, with varying fortune, until it reached the supreme court of the state, where the refusal to allow the removal was affirmed. From there the case was taken to the supreme court of the United States, where the judgment of the state court was reversed. The argument of counsel for Bates appears to have been principally devoted to the sufficiency of the security, and the court held that it was properly given under section 639 of the Revised Statutes; but the question of whether the petition was filed in time was also presented and decided. The chief justice disposed of it as a matter scarcely open to argument, in these words: "This petition was filed after a new trial had actually been granted, and while the cause was pending in the trial court for that purpose. It was, therefore, *in time,* and no objection is made to its form." This is the latest case in the supreme court on this question to which my attention has been attracted. It expressly decides that, under subsection 3 of section 639 of the Revised Statutes, while a cause is pending for trial in the state court, a petition for its removal is in time, without reference to the number of trials or mistrials that may have been had in it before. The suggestion of the learned chief justice, to the contrary, in *Alley* v. *Nott, supra,* on which the plaintiff seems to rely, must yield to this direct decision of the court announced by himself.

There is no other authority that gives any countenance to the proposition that the phrase "before *the* trial," as used in any of these removal acts, means any proceeding other than that which results in a verdict or judgment, subsisting and in force when the application is made. Where the word "trial" is qualified by the word "final," as in the act of 1867, this conclusion is inevitable. But even in the acts of 1866 and 1875 and section 639 of the Revised Statutes, where the phrase used is simply "before the trial," the language fairly construed means, as Mr. Justice BLATCHFORD said, in *Dart* v. *McKinney, supra,* "*the* trial of the case, and not *a* trial of it." In the nature of things, *the* trial of the case is not any one, but the final one,—the one that stands as a thing accomplished in the case. Where a jury is discharged without a verdict, the proceeding is properly known as a mistrial; and where a verdict is set aside because it ought not to stand, the result is the same. The proceeding has miscarried, and the consequence is not a trial but a mistrial. And, in the case of a removal for prejudice or local influence, there is a good reason for giving the non-resident party a right to make the application after a mistrial, for, as was said by Mr. Justice MILLER, in *Hess* v. *Reynolds,* 113 U. S. 80, 5 Sup. Ct. Rep. 377, "the hostile local influence may not become known or developed at an earlier stage of the proceeding."

In Spear's Law of the Federal Judiciary, (468,) after an examination of the cases on the subject, the author says that, whenever a verdict is.

set aside or the jury disagree, the weight of authority is that the case is restored to the *status* it had before any trial took place, and adds: "The theory on which this view rests is that the first trial, being wholly vacated, or resulting in a disagreement of the jury, was a nullity, and hence the case stands, as to the right of removal, just as it would have stood if no such trial had been had."

It does not appear that the resident defendants desire this case remanded as to them or at all. It would be so much additional expense and trouble to the plaintiff to try it in two parts in different courts.

The motion to remand is denied.